[No. 931-2. Division Two. April 10, 1974.]

*In the Matter of the Estate of* AMY G. L. WALKER, *Deceased.*

*Malcolm L. Edwards,* for appellant.

*Michael J. Swofford* and *David B. Hallin,* for respondent.

*Robert R. Beezer* and *Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle,* amici curiae.

PEARSON, C.J.—This is an appeal by two heirs, Robert Walker and Curtis Walker, from an order approving the

final account rendered by the institutional executor, National Bank of Commerce of Seattle, in the above-captioned estate.

It will serve no useful purpose for us to enumerate the bitter and protracted series of disputes concerning administration of the estate of Amy Walker, who died testate on March 20, 1970. There were four principal heirs—the two sons (hereinafter referred to as appellants) and two daughters, Edna Gray and Olive Walker, an incompetent. A portion of the dispute concerned the guardianship of Olive Walker. The will also named 16 legatees, each of whom was granted a bequest of $1,000.

The disputes which arose in connection with administration of the estate were between appellants on the one hand and the executor and the other two heirs on the other hand. During the course of administration the following petitions were decided adversely to appellants:

(1) Petition for an order revoking the order admitting will to probate and seeking an order admitting another will to probate.

(2) Petition to revoke the will of September 9, 1965 (the will which had been admitted as deceased's last will and testament) on the grounds of undue influence and lack of testamentary capacity of testator.

(3) Petition to remove the bank as executor. This latter petition contained some 8 allegations of misfeasance or malfeasance of the executor.

The latter petition came on for trial on March 27, 1972, in conjunction with the executor's final report and petition for distribution. On the third day of trial, the parties entered into a written stipulation which purported to settle all of the disputes or challenges. The parts of the stipulation which we deem pertinent to this appeal are as follows:

That the personal property of the Amy Walker Estate shall be divided equitably after giving consideration to any major items of value that are missing.

. . . .

That the deficit of funds required to close the Estate,

with the Executor to supply a precise deficit figure, shall be paid as follows: Edna Gray shall pay the sum of $1,000. The balance shall be prorated between the four heirs in accordance with the Willard Monnes appraisal.

. . .

That the deficit as computed shall be paid to the National Bank of Commerce of Seattle Trust Department by July 1, 1972 with credit thereon to be given Curtis Walker, $2052.50; Olive $2052.50 and Edna Gray $2052.50 for monies previously advanced for payment of taxes.

. . .

That the final account, except as modified by the above stipulation, shall be approved by counsel upon presentation.

. . .

Each party hereto, individually, and on behalf of his respective client does hereby waive any claim against each other party and no further claims, suits or proceedings arising out of either the Estate of Amy Walker or the Guardianship of Olive Walker shall be maintained against any other party hereto in relation to any transaction occurring on or before March 29, 1972.

On June 12, 1972, the executor gave notice of hearing on the final reports to appellants but did not mail a notice to the persons named in the will as recipients of specific bequests as required by RCW 11.76.040. After one continuance, made at appellant's request, the final report came on for hearing on September 1, 1972. Appellants and their counsel were present, having previously raised some 11 objections to the final report, including the notice omission mentioned above. The court listened to argument but after considering an offer of proof denied appellants' request to present evidence in support of their argument. At the hearing appellants were provided with what they describe as a "barely legible copy of an accounting supplementing that which was before the court at the March 27 trial."

Among the objections made to the court at the hearing on September 1, 1972, was that the "computer printout" cash accounting furnished by the executor was unintelligi-

ble and they were unable to decipher it after more than 80 hours of work.

The trial court took the matter under advisement and on November 15, 1972, entered a detailed order approving final account, decreeing distribution and discharging the executor. It is from this order that the appeal is taken.

The principal assignment of error concerns the failure of the executor to mail notices of the hearing on the final account as required by RCW 11.76.040 to the 16 legatees named in the will and who were bequeathed the sum of $1,000 each. In connection with this omission, the executor had also failed to mail to these same legatees notice of its appointment as executor and notice of the pendency of the probate as it was required to do by RCW 11.28.237. This omission was brought to the trial court's attention by appellants and was one of the grounds urged by them in support of their petition to remove the executor. This particular claim against the executor was, to the extent that it could be, compromised by the stipulation of March 29, 1972. We assume that the rationale for both these omissions is contained in the court's conclusional finding No. 5:

It properly appeared to the aforesaid attorney as of March 30, 1970, that the assets of the estate would be (and they are) insufficient to pay any of the specific monetary bequests. Because of the above, no persons whomsoever is entitled to rely upon the provisions of RCW 11.28.237 for any purpose whatsoever, and any and all issues raised by the brothers [appellants] in connection therewith were resolved by the Stipulation of March 29, 1972.

It is true that decedent's estate consisted largely of real property which was specifically devised to her two sons (appellants) and her two daughters, and at the outset of administration it appeared likely that the liquid assets of the estate would be insufficient to meet the costs of administration and consequently the 16 cash bequests would fail. That fact, however, is hardly persuasive as a reason for the executor and/or its attorney to ignore the explicit notice

requirements of RCW 11.28.237[1] and RCW 11.76.040.[2] The effect of noncompliance with these two statutes has recently been considered by the Supreme Court in *Hesthagen v. Harby*, 78 Wn.2d 934, 481 P.2d 438 (1971). That case involved a collateral attack by two testamentary heirs who had not received the requisite notices and were excluded from their inheritance. In allowing the collateral attack, the Supreme Court held that the two heirs to whom the estate had been distributed in 1962 were personally and primarily liable on a constructive trust theory for failing to advise the court and the administrator of the existence of the two plaintiff heirs. Liability was also assessed against the administrator (and against his bond) for breach of a fiduciary duty to ascertain and notify the heirs. The statute of limita-

---

[1]RCW 11.28.237 provides:

"Within twenty days after appointment, the personal representative of the estate of a decedent shall cause written notice of his said appointment, and of the pendency of said probate proceedings, to be mailed to each heir, legatee and devisee of the estate whose names and addresses are known to him, and proof of such mailing shall be made by affidavit and filed in the cause."

[2]RCW 11.76.040 provides:

"When such final report and petition for distribution, or either, has been filed, the court, or the clerk of the court, shall fix a day for hearing it which must be at least twenty days subsequent to the day of the publication as hereinafter provided. Notice of the time and place fixed for the hearing shall be given by the personal representative by publishing a notice thereof in a legal newspaper published in the county for one publication at least twenty days preceding the time fixed for the hearing. It shall state in substance that a final report and petition for distribution have, or either thereof has, been filed with the clerk of the court and that the court is asked to settle such report, distribute the property to the heirs or persons entitled thereto, and discharge the personal representative, and it shall give the time and place fixed for the hearing of such final report and petition and shall be signed by the personal representative or the clerk of the court.

"Whenever a final report and petition for distribution, or either, shall have been filed in the estate of a decedent and a day fixed for the hearing of the same, the personal representative of such estate shall, not less than twenty days before the hearing, cause to be mailed a copy of the notice of the time and place fixed for hearing to each heir, legatee, devisee and distributee whose name and address are known to him, and proof of such mailing shall be made by affidavit and filed at or before the hearing."

tions was held not to bar the action commenced some 4 years after the estate was closed.

The rationale of the decision appears in *Hesthagen v. Harby, supra* at 942:

> Since plaintiffs were not notified in conformity with the mandatory provisions of the statutes and rule,[3] and were not otherwise timely informed of the probate proceedings, they were denied procedural due process. Such a deprivation amounts to a jurisdictional defect as to them, rendering the decree of distribution void. [Citing authorities.]

Again at page 944, the Supreme Court said:

> We have stated above that, because of the failure of notice, there was a jurisdictional defect inherent in the decree of distribution. Such a decree is void and does not vest title in anyone. [Citing cases and other authorities.]

■ In light of this decision, we are unable to overlook the jurisdictional implications of the failure to give notice simply because the estate at the outset appeared to be insufficient to cover the bequests. There will be, in light of that decision with its jurisdictional implications, a perpetual cloud on the property inherited by the four heirs who did participate in the administration.

We think use by the Supreme Court in *Hesthagen v. Harby, supra,* of the term "void" to describe the effects of the decree is unfortunate and that describing the effect as *"voidable"* would be a more apt designation. The superior court clearly has subject matter jurisdiction of the estate of one who dies leaving property within the county. Const. art. 4, § 6 (amendment 28). *See* RCW 11.16.050 *et seq.* Furthermore, the superior court has personal jurisdiction over the persons who appear in the proceedings whether or not they receive the requisite notices. RCW 11.16.083 provides: "Any person who submits to the jurisdiction of the court in any hearing shall be deemed to have waived notice thereof."

It is our opinion, therefore, that the superior court did

---

[3]SPR 98.04W has since been abrogated.

have jurisdiction over the subject matter of the estate of Amy Walker, and had personal jurisdiction over appellants and the other heirs who appeared and participated in the proceedings, to the extent that they must be held bound by those proceedings. RCW 11.16.083.

Were we to hold that the failure to give notice to the 16 heirs deprived the court of all jurisdiction, as the dictum in *Hesthagen* suggests, then all that has transpired in more than 2 years of administration would be a nullity and would have to be redone at great inconvenience, delay, and expense to the parties. Therefore, we decline to rule that the entire administration has been a nullity. However, as to the 16 legatees who were not given the requisite notice, the proceedings are obviously *voidable* in the event of a future collateral attack. *Hesthagen v. Harby, supra.*

Appellants do, however, contrary to respondent's contention, have standing to raise this issue and have the defect corrected so that their inheritance may be received free of future collateral attack—whether or not such attack would be successful.

Accordingly, we think proper disposition requires that we vacate the order approving final account, decreeing distribution and discharging the executor, and remand this case to the superior court under directions that the executor shall at its own expense:

(1) Give notice to all heirs, including the 16 legatees, of a hearing to consider its final report, in strict accordance with RCW 11.76.040.

(2) Mail with the above-mentioned notice to all heirs, including the 16 legatees, a complete resume of all that has transpired in the estate, including, but not limited to, all orders entered by the trial court, including a copy of this opinion, the inventory and appraisement, and all accountings rendered during administration, together with any supplementary accounting which will be necessary because of the passage of time.

In the event any of the executor's actions are challenged in writing by any of the aforesaid 16 legatees, the court

shall allow the challenge to be heard on oral testimony, and determine the questions raised under the powers granted it by RCW 11.02.020. It may be that the proceedings will not result in any challenges by virtue of the lack of liquid assets in the estate. However, *Hesthagen v. Harby* questions the efficacy of *all* orders entered in this estate to the detriment of the heirs who stand to inherit from it. Accordingly, we deem the above steps necessary to cure the "jurisdictional" defect as to the 16 excluded heirs.

We now consider how the "jurisdictional" defect should affect appellants and the other two heirs who have had statutory and actual notice of and took an active part in all of the proceedings to date. It is our view that, having submitted to the jurisdiction of the court, they should be bound by the otherwise proper orders of the court. Since we must vacate the order approving final account, decreeing distribution, and discharging the executor, appellants and the two other heirs should be placed in the position they were in after entering into the stipulation of March 29, 1972. That stipulation was made in accordance with CR 2A and was approved by the court. *See Frase v. Johnson*, 9 Wn. App. 634, 513 P.2d 857 (1973). We consider the stipulation binding upon the heirs and the executor unless adherence to its terms conflicts with the rights of the 16 legatees who were not parties to it. In the event such conflict occurs, the trial court may, in its discretion and under the authority of RCW 11.02.020, make such revisions of the stipulation as may be necessary to accommodate the rights of the 16 legatees and accomplish an ultimate settlement of the estate in a manner consistent with the intent of the stipulation.

It is our view that insofar as appellants and the other two heirs are concerned, all issues pertaining to actions taken by the executor prior to March 29, 1972, were fully resolved by the stipulation. This includes challenges to the inventories which had previously been filed as well as the method by which the heirs would be required to contribute to the estate's cash deficit.

Many of appellant's 37 assignments of error, in our view, seek to review matters precluded by the stipulation. In order to obviate the apparent confusion as to what matters were foreclosed by the stipulation, we offer these further instructions.

(1) The stipulation forecloses appellants from challenging the sufficiency or accuracy of the accounting submitted by the executor at the hearing ending on March 29, 1972. The stipulation approved the final account rendered at that time "except as modified by the above stipulation . . ." Since we have directed the executor to prepare a new, up-to-date accounting and final report, appellants may, on the remand, raise legitimate objection only to the sufficiency and accuracy of the supplementary accounting and final report.

Since appellants have specifically objected to the use of computer printouts as a means of rendering the accounting, we deem it advisable to comment on that complaint. These printouts show the income (and sources) and disbursements (and recipients) for the period involved. They are adequate and comprehensible for that purpose. However, the final report must contain all the information required by RCW 11.76.030. The computer printouts, we think, are sufficient to show "moneys collected" since the previous report, and "debts paid" since the previous report. They are insufficient, however, to satisfy the other reporting requirements of RCW 11.76.030.

(2) Appellants are foreclosed by the stipulation from again raising the legality of the executor's action in allegedly paying pre-death creditors who did not file claims in the estate.

(3) Appellants are also foreclosed by the stipulation from claiming a surcharge against the executor or his attorney for alleged loss of personal property. They may raise an issue only as to the improper implementation, if any, of the provision in the stipulation: "That the personal property of the Amy Walker Estate shall be divided equita-

bly after giving consideration to any major items of value that are missing."

(4) Appellants are foreclosed from claiming that the rents and profits from all estate property should be used to pay the estate deficit. The method for handling the estate deficit is provided for in the stipulation and should be strictly followed.

█ (5) The attorney's and executor's fees as agreed to in the stipulation should be allowed. Because the error requiring the remand was the fault of the executor and/or its attorney, no further fees should be allowed for completing administration, in accordance with the remand.

(6) Appellants are permitted to demonstrate to the trial court, if they can, that the method of apportioning the estate deficit by the executor does not conform to the formula provided in the stipulation. There appears to us to be a minor discrepancy in application of that formula. There is also a question in our minds as to whether or not the stipulation resulted in a compromise of a claim the estate had against appellant, Robert Walker. It is not clear to us whether or not Robert Walker's indebtedness to the estate was in contention as an issue in the trial. If it was, then the stipulation would appear to apply to it. If not, the stipulation would not affect the debt. This question should be resolved at the hearing on final account. (We repeat, however, the appellants may not contend that the rents and profits from all estate property should be used to pay the estate deficit.)

Finally, the trial court did not allow a surcharge against the executor for appellant's attorney's fees, pursuant to RCW 11.76.070. We think that ruling was proper for the trial phase of this case, inasmuch as the stipulated settlement did not provide for such surcharge and it would be inconsistent with the fees agreed to had such a surcharge been made. Likewise, a fair reading of the stipulation does not contemplate such a surcharge for the winding up of the estate.

We do think, however, because the noncompliance with

RCW 11.76.040 made necessary this appeal and remand, which in turn necessitates an additional evidentiary hearing, appellants should be entitled to an award of attorney's fees to be surcharged against the executor and its attorney equally (RCW 11.76.070). Likewise, the costs on appeal should be surcharged against the executor and its attorney equally. We leave the amount of attorney's fees for the ensuing proceedings to the sound discretion of the trial court. We allow attorney's fees in the sum of $1,000 for the appeal phase of the case. Because appellants' brief contained objectionable material on pages 30 and 31 which was stricken by order of this court, and because a significant part of appellants' brief seeks to reargue matters foreclosed by the stipulation, we will allow to be taxed as costs on appeal, upon a proper taxing of costs, one-half of appellants' opening brief and all of their reply brief.

In the event literal compliance with the instructions of this opinion becomes impossible, impractical or burdensome, the trial court is vested with broad discretionary power under RCW 11.02.020 to bring this administration to a conclusion.

The order approving the final report, decreeing distribution, and discharging the executor is vacated and the case is remanded to the trial court for proceedings consistent with this opinion.

ARMSTRONG and PETRIE, JJ., concur.