9 P.3d 805 (2000)
141 Wash.2d 539
Marie PITZER, Carolann Guilford, and James Allotta, Respondents,
v.
UNION BANK OF CALIFORNIA (formerly known as the Bank of California), a foreign corporation, as Personal Representative of the Estate of Rose Magrini, Petitioner, and
In the Matter of the Estate of Rose Magrini, Deceased,
In the Matter of the Estate of Frank Magrini, Deceased.
No. 67701-8.
Supreme Court of Washington, En Banc.
Argued February 15, 2000.
Decided September 14, 2000.
*806 Kendall Michael Jennings, Paul Ralph Willett, James W. Feltus, Tacoma, for Petitioner.
*807 Franklin William Shoichet, Seattle, for Respondent.
MADSEN, J.
Marie Pitzer, Carolann Guilford, and James Allotta (Respondents) have recently come to believe they are the illegitimate[1] children of the late Frank Magrini and seek imposition of a constructive trust against the estate of Rose Magrini, Frank Magrini's late wife, who was the coexecutor and sole beneficiary of his estate. Alternatively, Respondents seek to reopen his probate, which has been closed since 1974.
At the time of Frank Magrini's death, former RCW 11.04.080, repealed by 1965, ch. 145, § 11.99.015, provided that illegitimate children were not able to inherit from their father's estate as pretermitted heirs unless the father acknowledged paternity in a signed and witnessed writing. No acknowledgment exists in this case. Nevertheless, Respondents contend they are entitled to receive a portion of Frank Magrini's estate because, argue Respondents, former RCW 11.04.080 is constitutionally infirm. Specifically, they contend the statute unlawfully discriminates on the basis of illegitimacy and sex based classifications and thus, violates the equal protection clause of the United States Constitution, article I, section 12 of the Washington Constitution, and the Equal Rights Amendment.
We hold that Respondents may not avail themselves of the equitable remedy of a constructive trust, nor have they made the necessary showing to reopen Frank Magrini's probate. Therefore, we find it unnecessary to decide the merits of Respondents' constitutional arguments. See State v. Smith, 104 Wash.2d 497, 505, 707 P.2d 1306 (1985) ("court will not reach a constitutional issue if it can decide the case on nonconstitutional grounds"). Accordingly, we reverse the Court of Appeals and affirm the trial court's grant of summary judgment in favor of Petitioners.

FACTS
The Petitioners in this case are Union Bank of California (the personal representative of Rose Magrini's estate) and the estates of Rose and Frank Magrini. Respondents are Marie Pitzer, Carolann Guilford, and James Allotta, all of whom claim to be the illegitimate children and pretermitted heirs of Rose Magrini's late husband, Frank Magrini. Respondents, in two consolidated actions, seek to impose a constructive trust on his wife's estate for the amounts they believe they were entitled to receive as his pretermitted heirs, or alternatively, reopen Frank Magrini's 1965 probate. Clerk's Papers (CP) at 65-72, 207-12. Respondents have filed a separate paternity action, not consolidated with this case, which is currently pending in superior court. Resp'ts' Opening Br. at App. B.
Frank and Rose Magrini were married, but never had children. Rose's brother, Fischer Allotta, was married to Anna Allotta until the couple's divorce in 1960. CP at 110. Anna Allotta gave birth to Respondents, the last of whom was born in 1946. Throughout their childhood, Respondents knew of Frank Magrini as their "uncle." Id.
Frank Magrini died testate on September 6, 1965, and his will was admitted to probate on September 9 of the same year. CP at 6. Frank left his entire estate to his wife Rose, naming her and his attorney, Leo McGavick, as coexecutors of his estate. CP at 2, 4. Respondents were contingent beneficiaries under Frank Magrini's will, named in a list of eight "nieces and nephews." CP at 4. The record does not contain any evidence that Respondents were given official notice of Frank Magrini's probate. The coexecutors distributed the assets as provided for in the will and a Declaration of Completion of Administration was filed on March 8, 1974. CP at 63.
*808 Rose Magrini died on December 8, 1995. CP at 207. In April 1996, Respondents moved to reopen Frank Magrini's estate. CP at 71. They also filed suit against Petitioner, the personal representative of Rose Magrini's estate. CP at 207-212. By agreement of the parties the two actions were consolidated. CP at 219. Respondents claim the coexecutors of Frank Magrini's estate, Rose Magrini and Leo McGavick, should have notified them of the 1965 probate because they are Frank Magrini's children, and thus, according to Respondents, entitled to a share of his estate as pretermitted heirs. CP at 65-66.
In a supporting affidavit, Respondent Carolann Guilford explains how in 1995 she came to believe that "Uncle Frank" might be more than just an uncle. CP at 114-16. Carolann Guilford states that she was present when James Allotta visited Rose Magrini in the hospital just prior to her death. CP at 115. According to Ms. Guilford, Rose Magrini recognized Mr. Allotta (whom she had not seen in 30 years) and after he left the room Rose removed her oxygen mask and said, "Frank's son." CP at 112. Ms. Guilford later discussed that remark with older relatives. CP at 116. These relatives recounted that they had known for years that Fischer Allotta had been sterile due to syphilis, that Anna Allotta had a lengthy affair with Frank Magrini, and that Frank Magrini had fathered all of Anna Allotta's children. CP at 119-23, 148-51. Three relatives submitted affidavits confirming the same and stating that Frank's paternity of Anna's children was a closely guarded family secret until after Rose's death. Id.[2]
The Pierce County Superior Court granted summary judgment in favor of Petitioners, dismissing Respondents' claims with prejudice. CP at 237-38. The court found that former RCW 11.04.080 was constitutional and that as such, Respondents did not qualify as pretermitted heirs because Frank Magrini had not acknowledged his paternity in a signed and witnessed writing. Resp'ts' Opening Br. at App. A. In making its decision, the court assumed that Respondents were "in fact" biological children of Frank Magrini. Id. As an alternative finding, the court determined that there was no showing of fraud, which the court would have required as a prerequisite to reopening Frank Magrini's estate or imposing a constructive trust on the estate of Rose Magrini. Id.
In a published split decision, the Court of Appeals, Division Two, reversed. Pitzer v. Union Bank, 93 Wash.App. 421, 969 P.2d 113 (1998). The Court of Appeals held that even if former RCW 11.04.080 were constitutional, Rose Magrini, as coexecutor of Frank Magrini's estate, had a duty to notify Respondents of the probate since she knew or reasonably should have known Frank Magrini might be Respondents' biological father. Id. at 427-28, 969 P.2d 113. The court concluded that this lack of notice created a jurisdictional defect, providing sufficient grounds to reopen Frank Magrini's estate or impose a constructive trust against the estate of Rose Magrini in favor of Respondents. Id. at 435-36, 969 P.2d 113. The court went on to hold that former RCW 11.04.080 is unconstitutional on equal protection grounds and that Respondents are therefore pretermitted heirs under former RCW 11.12.090, repealed by Laws of 1994, ch. 221, § 72, assuming they can prove paternity. Id. at 428-35, 969 P.2d 113.

ANALYSIS
The date of a testator's death generally governs the applicable law of succession. In re Succession of Landry, 460 So.2d 29, 30 (La.Ct.App.1984); In re Leavy's Estate, 122 N.H. 184, 442 A.2d 588, 590 (1982); Hogan v. Hermann, 101 Idaho 893, 623 P.2d 900, 21 A.L.R.4th 249 (1980); In re Schick's Estate, 149 Ind.App. 549, 274 N.E.2d 291, 299 (1971). There are two former RCW provisions, in effect at the time of Frank Magrini's death in 1965, pertinent to this case. Former RCW 11.12.090 was Washington's pretermitted heir statute:
If any person make his last will and die leaving a child or children ... not named *809 or provided for in such will, although born after the making of such will or the death of the testator, every such testator, as to such child or children not named or provided for, shall be deemed to die intestate, and ... entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same shall be assigned to them, and all the other heirs, devisees and legatees shall refund their proportional part.
Laws of 1965, ch. 145, § 11.12.090.
Under this provision a child was not "named" unless they were identified in the will by the testator as a "child." In re Hamilton's Estate, 73 Wash.2d 865, 441 P.2d 768 (1968) (child named as a stepchild); In re Estate of Marshall, 27 Wash.App. 895, 900, 621 P.2d 187 (1980) (adopted child named as niece).[3] Moreover, a child was not "provided for" if his or her gift was contingent in nature. In re Ridgway's Estate, 33 Wash.2d 249, 205 P.2d 360 (1949).
The second provision, former RCW 11.04.080 governed when a child born out of wedlock was deemed an heir of their biological parents:
Every illegitimate child shall be considered as an heir to the person who shall in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, and shall in all cases be considered as heir of his mother, and shall inherit his or her estate in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock.
Code of 1881, § 3305. Laws of 1965, ch. 154, sec. 11.04.080.[4]
Respondents do not dispute that former RCW 11.04.080, by its terms, precludes them from taking any portion of Frank Magrini's estate as pretermitted heirs. Even if they are Frank Magrini's biological children, there is no contention that he signed a written acknowledgment of paternity as to any of them. Furthermore, both parties agree that regardless of whether former RCW 11.04.080 would have been deemed unconstitutional during the administration of Frank Magrini's estate or under current law if challenged, Rose Magrini and her coexecutor were entitled to assume the statute was constitutional during the administration of Frank Magrini's estate. State v. Blank, 131 Wash.2d 230, 235, 930 P.2d 1213 (1997) (statutes are presumed constitutional). Nevertheless, Respondents contend they are entitled to challenge the constitutional validity of RCW 11.04.080 over 20 years after the closing of Frank Magrini's estate. We disagree.
Initially, Respondents seek imposition of a constructive trust in their favor against the estate of Rose Magrini, the coexecutor and sole beneficiary of Frank Magrini's estate. In Ellis v. Schwank, 37 Wash.2d 286, 223 P.2d 448 (1950), we quoted Judge Cardozo's classic definition of a "constructive trust":
"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."
37 Wash.2d at 289, 223 P.2d 448 (quoting Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378, 380 (1919)). "Constructive trusts arising in equity are imposed when there is clear, cogent, and convincing evidence of the basis for impressing the trust." Baker v. Leonard, 120 Wash.2d 538, 547, 843 P.2d 1050 (1993) (emphasis added).
Respondents argue that a proper basis exists for imposition of a constructive trust *810 because, according to Respondents, Rose Magrini was unjustly enriched at their expense. Respondents rely on Hesthagen v. Harby, 78 Wash.2d 934, 481 P.2d 438 (1971). In Hesthagen, we imposed a constructive trust in favor of the rightful intestate heirs of an estate because the heirs were not given notice of the probate proceeding. Id. at 945-46, 481 P.2d 438. The claimants in Hesthagen were the nieces and nephew of the decedent and "actual" heirs under the then existing intestacy statute. Id. at 936, 938, 481 P.2d 438. They were not notified of the estate distribution until more than three years after it had occurred, and they brought an action seeking imposition of a constructive trust against the original distributees and the estate administrator. Id. at 936, 944, 481 P.2d 438.
Failure to deliver notice to the heirs in Hesthagen was unreasonable as "sources of information were readily available which would have revealed the existence of plaintiffs as surviving heirs ...." Id. at 938, 481 P.2d 438. Since the heirs' names and addresses "were ascertainable by the exercise of due diligence" we found that the heirs were denied procedural due process and that "[s]uch a deprivation amounts to a jurisdictional defect as to them, rendering the decree of distribution void." Id. at 942, 481 P.2d 438. The claimants in Hesthagen did not seek to reopen the probate. Id. at 945, 481 P.2d 438. Instead they sought imposition of a constructive trust against the defendants. Id. We imposed the constructive trust, noting that:
What is important is that the administrator, as a fiduciary, violated his duty to ascertain and notify the heirs. When this breach of duty caused or resulted in the property in the estate being transferred to the [distributees], they received it and held the other heirs' portion of it under a constructive trust for the other rightful heirs.
Id. at 946, 481 P.2d 438.
Respondents argue that Hesthagen stands for the proposition that no showing of fraud or other wrongdoing is necessary if a party brings an unjust enrichment claim seeking imposition of a constructive trust, as opposed to an action to reopen a probate. Resp'ts' Supplemental Br. at 13. Along these lines Respondents appear to argue that the simple fact that Rose Magrini received assets to which she would not be entitled, if Respondents could have proved former RCW 11.04.080 was unconstitutional during the pendency of Frank Magrini's probate, is enough to allow their claim if Rose Magrini failed to use "due diligence" in searching for heirs. Id. We disagree.
We have often utilized the equitable remedy of a constructive trust in cases where there is a sufficient showing that a probate may be reopened. Hesthagen, 78 Wash.2d at 945-46, 481 P.2d 438 (nonpurposeful lack of notice); Ellis v. Schwank, 37 Wash.2d at 288-89, 223 P.2d 448 (extrinsic fraud); Francon v. Cox, 38 Wash.2d 530, 541, 231 P.2d 265 (1951) (extrinsic fraud). This is true unless some equitable basis forecloses this remedy (i.e., an intervening good faith purchaser for value). Viewcrest Coop. Ass'n v. Deer, 70 Wash.2d 290, 293, 422 P.2d 832 (1967). Indeed, our older cases limited utilization of constructive trusts exclusively to these circumstances. See Francon, 38 Wash.2d at 536, 231 P.2d 265.
We now recognize that in most contexts "constructive trusts are also imposed in broader circumstances ...." Baker, 120 Wash.2d at 547, 843 P.2d 1050. As we stated in Baker:
In cases where there has been no evidence of fraud or wrongdoing, the courts have imposed constructive trusts when the evidence established the decedent's intent that the legal title holder was not the intended beneficiary ....
Unless an equitable base is established by evidence of intent, there must be "some element of wrongdoing" in order to impose a constructive trust.
Id. at 548, 843 P.2d 1050.
We did impose a constructive trust in Hesthagen without a showing of purposeful wrongdoing. Hesthagen, 78 Wash.2d at 946, 481 P.2d 438. However, the original decree of distribution in Hesthagen was void, which would have allowed the claimants to attack the original decree of distribution if they had desired.
*811 Furthermore, in Hesthagen there was no indication the decedent intended that her property be distributed to someone other than the claimants, who were legally entitled to inherit under the then existing laws of intestacy. See Wilson v. Jones, 281 S.C. 230, 314 S.E.2d 341, 343 (1984) ("where a person has the right to die intestate ... he is charged with full knowledge of who will succeed to his property if he dies intestate [and] the assumption exists that ... he is satisfied with the will the law of the state made for him"). The reverse is true in this case. Respondents were not legally entitled heirs at the time of Frank Magrini's probate and it is quite clear Frank Magrini did not intend for Respondents to take a share of his estate as pretermitted heirs. Frank Magrini specifically named Respondents in his will as contingent beneficiaries, foreclosing any equitable argument by Respondents concerning Frank Magrini's intent. Without an equitable base, we will not impose a constructive trust.
Alternatively, Respondents argue they are entitled to reopen the estate of Frank Magrini, which has been closed since 1974. Petitioners contend that a showing of fraud is necessary to do so, and argue that no evidence of fraud is present in this case. We preliminarily note the strong interest, grounded in considerations of finality, in not disturbing the sanctity of a closed estate. See Little v. Smith, 943 S.W.2d 414, 417 (Tex.1997) ("The need for finality of probate proceedings is well recognized by this and other courts"); In re Williamson's Estate, 95 So.2d 244, 246, 65 A.L.R.2d 1195 (Fla. 1956) (It is "public policy ... that the estates of decedents shall be speedily and finally determined with dispatch"). Because of these concerns, a court will normally decline to reach back in time and evaluate errors made during the administration of a currently closed probate. Reed v. Campbell, 476 U.S. 852, 855-56, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986); In re Estate of Myhre, 442 N.W.2d 356, 358 (Minn.App.1989) (`"Without good reason to reopen an estate, any late claims are barred, for `at some point there must be finality in probate proceedings.'") (quoting In re Estate of Molden, 396 N.W.2d 624, 627 (Minn.App.1986)).
In Reed, the United States Supreme Court provides a lucid example of the above principle. The Court held that its prior equal protection decision in Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) (declaring unconstitutional an Illinois statute barring inheritance by an illegitimate child from his or her father unless the father married the mother and acknowledged the child), could be applied in a currently open probate proceeding initiated before the date of the Court's decision. Reed, 476 U.S. at 855-56, 106 S.Ct. 2234. The Court went on to note the marked difference between the way an "open" probate and a "closed" probate should be treated:
After an estate has been finally distributed, the interest in finality may provide an additional, valid justification for barring the belated assertion of claims, even though they may be meritorious and even though mistakes of law or fact may have occurred during the probate.
Id.; see also Mitchell v. Hardwick, 297 S.C. 48, 374 S.E.2d 681, 683 (1988) (retroactively applying Trimble only if "estate administration is subject to further resolution").
While the interest of finality is of paramount concern, it is not absolute. We recognize that in limited circumstances it must yield to concerns of justice and fairness. Our cases have historically recognized only two instances in which this will occur. First, we have allowed an estate to be reopened upon a showing of extrinsic fraud.
It has been repeatedly held by this court that a decree of distribution by the superior court in probate ...., is entitled to the same weight as a judgment in any court or proceeding, is of equal solemnity, and cannot be attacked ... except for fraud.
Meeker v. Waddle, 83 Wash. 628, 635, 145 P. 967 (1915); see also Farley v. Davis, 10 Wash.2d 62, 70-71, 116 P.2d 263, 155 A.L.R. 1302 (1941). Second, when a decree of distribution is void we will decline to give it force. For instance, if there is a failure to give notice to a reasonably ascertainable heir entitled to notice, there will be a "jurisdictional defect inherent in the decree of distribution." Hesthagen, 78 Wash.2d at 944, 481 P.2d 438.
*812 "Such a decree is void and does not vest title in anyone." Id.; see Philip A. Trautman, Vacation and Correction of Judgments in Washington, 35 Wash. L.Rev. 505, 530 (1960) ("There is no time limit as a judgment entered without jurisdiction is void"). This is no more than an expression of the rule that only "decrees of distribution made ... upon due notice as provided by statute are final adjudications having the effect of judgments ...." Farley, 10 Wash.2d at 70-71, 116 P.2d 263(emphasis added).
These historical rules are set against the fact that the law of reopening estates is derived from the law of vacating judgments. In re Jones' Estate, 116 Wash. 424, 426, 199 P. 734 (1921). With the advent of CR 60, additional justifications upon which to reopen an estate may exist. Specifically, CR 60(b)(4) allows the court to vacate a judgment procured through "[f]raud ..., misrepresentation, or other misconduct of an adverse party." CR 60(b)(4). Of course, a "void" judgment is also unenforceable. CR 60(b)(5). CR 60 also contain a catchall provision, which permits the court to vacate a judgment for "[a]ny other reason justifying relief from the operation of the judgment." CR 60(b)(11). In all cases, a motion under CR 60 must be brought within a "reasonable time." CR 60.
Respondents have failed to show they are entitled to reopen Frank Magrini's estate under the above rules. First, Respondents were not entitled to notice of Frank Magrini's probate, and therefore, we find no jurisdictional defect in the original decree of distribution. Second, Rose Magrini did not act fraudulently, in her capacity as coexecutor of Frank Magrini's estate by failing to give Respondents notice of Frank Magrini's probate. Finally, Respondents offer no other "reason justifying relief from the operation of the judgment" under CR 60(b)(11).
At the time of Frank Magrini's probate, former RCW 11.76.040 required a personal representative to give notice of his or her appointment and of the pending probate to "each heir and distributee of said estate whose name and address is known to him...." Laws of 1955, ch. 205, § 13 (emphasis added). The term "heir" was defined by former RCW 11.04.280 as including those persons "to whom land, tenements, and heriditaments descend ...." Former RCW 11.04.280 (Laws of 1895, ch. 105, § 4, repealed by Laws of 1965, ch. 145, § 11.99.015).
The Court of Appeals held that Respondents were entitled to notice of Frank Magrini's probate, even though they do not fall within the definition of "heir" found in former RCW 11.76.040, because Rose Magrini could not definitively know whether Frank Magrini had "acknowledged" them in writing. Accordingly, since Rose Magrini could not definitively know if Respondents were "heirs," they were entitled to notice as potential heirs.
The difficulty with this view lies in what is known in hindsight. Respondents were "in fact" not pretermitted "heirs" to Frank Magrini's estate because Frank Magrini did not acknowledge paternity as provided for in former RCW 11.04.080. Therefore, they were not "heirs" under former RCW 11.76.040, and as a result, not interested parties in the estate. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (due process requires that "interested parties" be apprised of the pendency of an action). A decree of distribution does not contain a jurisdictional defect because a party not "actually" entitled to notice under the governing statute did not receive notice. If Respondents had a signed acknowledgment from Frank Magrini then they may have been entitled to notice, depending on whether "due diligence" would have resulted in their notification. Hesthagen, 78 Wash.2d at 941, 481 P.2d 438 ("heirs and distributees entitled to notice include [ ] those whose names and addresses were ascertainable by the exercise of due diligence").
If we were to adopt a different rule, a personal representative would be required to give notice to persons who, although not legally entitled heirs, would become such if they were able to challenge and invalidate a statutory provision that currently bars them from taking a portion of the estate. We believe such a rule would inject a degree of uncertainty into probate proceedings that is antithetical to the underlying desirability of finality in these cases, and goes far beyond *813 any requirement of due process currently recognized by the courts. As such, we hold that Respondents were not entitled to notice of Frank Magrini's probate in their status as his potential illegitimate children, and thus, the original decree of distribution is not void by reason of a jurisdictional defect.
We also find no evidence of fraud in this case. Respondents appear to argue if Rose Magrini knew they were Frank Magrini's illegitimate children, her failure to give them notice of his probate constituted fraud. The most pertinent case on this point is Francon v. Cox, a case in equity dealing with the question of extrinsic fraud. The decedent in Francon died intestate and the decedent's widow failed to notify the decedent's daughter, from a prior marriage, of her father's probate. Francon, 38 Wash.2d at 531-32, 231 P.2d 265. We held that this conduct amounted to extrinsic fraud. Id. at 537, 541, 231 P.2d 265. This is true even though the widow did not subjectively believe the claimant was the decedent's daughter. Id. at 532, 231 P.2d 265. Nevertheless, in Francon there was strong evidence that the widow should have realized that the claimant may have been decedent's daughter. Id. at 533, 231 P.2d 265. In Francon, we quoted the following testimony of the widow:
Q: Were you introduced to [the daughter] at that time by your husband?
A: Yes. He winked at me at the time. He looked at me and gave me a wink and introduced me.
Q: And how did he introduce you to her? Did he say, `this is my daughter Betty,' or something of that kind?
A: I don't remember.
Q: You don't remember?
A: I don't remember just how, you know, just how it was done, but it
was that it was his daughter, and then he winked at the time.'
Id.
Unlike Respondents, the daughter in Francon was in fact an "heir" under the then existing laws of intestacy and was, therefore, an interested party in the estate. Francon, 38 Wash.2d at 537, 231 P.2d 265. It is extrinsic fraud to "conceal[ ] or fail[ ] to disclose to the court the existence of a person interested in the estate," id. at 536, 231 P.2d 265, but it is not fraudulent to fail to apprise the court of persons, like Respondents, who have no legal interest in the estate. Second, there was evidence in Francon that the widow should have known her late husband had a daughter, and this status alone allowed the daughter to inherit from her father's estate. Id. at 533, 231 P.2d 265; see also Young v. Estate of King, 579 So.2d 1250 (Miss.1991) (fraud not to give notice to "known" potential illegitimate child where law allowed child to establish paternity in a judicial proceeding within 90 days of decedent's death).
All that can be said of this case is that there is evidence to suggest Rose Magrini may have known, or may have been able to discern through investigation, that her husband might have been the biological father of Respondents. But Respondents do not allege, nor can they allege, that Rose Magrini could have uncovered evidence that they were the "acknowledged" children of Frank Magrini. It is evidence of a signed acknowledgment, not the simple fact of a biological relationship, which would have made Respondents potential "heirs" under former RCW 11.04.080.
Thus, the pertinent question is not whether Rose Magrini had knowledge that Respondents may have been illegitimate children of Frank Magrini. What is relevant is whether she had any knowledge that Respondents were "acknowledged" children of Frank Magrini. There is no indication in this case that Rose Magrini had even a suspicion that Respondents may have been "heirs" of Frank Magrini. Indeed, his will specifically names them as "nieces" and "nephews," providing strong evidence that even if Respondents were his children, they were unacknowledged by him.
Respondents' final contention is that the trial court erred by failing to allow them additional time for discovery prior to granting summary judgment in favor of Petitioners. CR 56(f) provides:
Should it appear from the affidavits of a party opposing the [summary judgment] motion that he cannot, for reasons stated, *814 present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
CR 56(f).
We review a trial court's denial of a CR 56(f) motion for abuse of discretion. Tellevik v. Real Property, 120 Wash.2d 68, 90, 838 P.2d 111 (1992). "A court may deny a motion for a continuance when `(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.'" Id. at 90, 838 P.2d 111 (quoting Turner v. Kohler, 54 Wash.App. 688, 693, 775 P.2d 474 (1989)).
What Respondents ostensibly seek is additional information regarding Rose Magrini and her coexecutor's knowledge as to their paternity at the time of Frank Magrini's probate. As noted above, such information, even if in existence, would be irrelevant to the question of whether fraud existed in this case. The only relevant evidence would be that which shows Rose Magrini or her coexecutor had information that Respondents were "acknowledged" children of Frank Magrini and, of course, no such information exists. Indeed, all of the affidavits submitted by Respondents strongly suggest that Frank Magrini's fathering of Respondents, if true, was a highly guarded "family secret." See Resp'ts' to Pet. for Review at 1; CP at 110-23, 148-51. For this reason, we hold it was not an abuse of discretion for the trial court to deny Respondents' CR 56(f) request.

CONCLUSION
We reverse the Court of Appeals, declining to impose a constructive trust on the estate of Rose Magrini in favor of Respondents. We further hold that Respondents have not established a sufficient ground to reopen the closed estate of Frank Magrini. Accordingly, we find it unnecessary to address the constitutional questions presented by Respondents. We reinstate the trial court's grant of summary judgment in favor of Petitioners.
GUY, C.J., SMITH, JOHNSON, ALEXANDER, TALMADGE, SANDERS, IRELAND, and BRIDGE, JJ., concur.
NOTES
[1] We recognize that the term "illegitimate child" is an offensive holdover from an era in which society was much less sensitive to the rights of children born out of wedlock. See Guard v. Jackson, 132 Wash.2d 660, 668, 940 P.2d 642 (1997) (Smith, J., concurring). This term is used in this opinion in the same manner it is used by the parties, as a term of art used to describe a child born out of wedlock, whose parents have not later remarried, and who has not been subsequently adopted.
[2] ER 804(b)(4)(i) allows a hearsay exception if a declarant is unavailable for "[a] statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though declarant had no means of acquiring personal knowledge of the matter stated ..."
[3] Under the current statute, a child is considered "named" whether identified as the testator's child "or in any other manner." RCW 11.12.091(2)(a). Thus, under current law, by being named as nieces and nephews Respondents were adequately named in Frank Magrini's will, and would, therefore, not be pretermitted heirs.
[4] In 1975, the Legislature rewrote RCW 11.04.081 (the successor to RCW 11.04.080). The new statute provides:

For purposes of inheritance to, through, and from any child, the effects and treatment of the parent-child relationship shall not depend upon whether or not the parents have been married.
RCW 11.04.081.