[No. 54647-3-I. Division One. June 6, 2005.]

*In the Matter of the Estate of* MARTIN LITTLE, *Deceased,* JOHN VANNOY, *Appellant.*

*Howard M. Goodfriend* (of *Edwards, Sieh, Smith & Goodfriend, P.S.*) and *Bruce R. Moen*, for appellant.

*Franklin W. Shoichet*, for respondents.

¶1 BECKER, J. — An executor must give notice of probate to the deceased's heirs, as required by statute. When heirs show notice was not provided to them, a completed estate will be reopened unless the executor demonstrates that the names and addresses of the heirs were not reasonably ascertainable through the exercise of due diligence.

## FACTS

¶2 Martin Little died on August 6, 1992 at age 89, two months after executing his last will and testament. Little had nieces and nephews, but no children of his own. He left behind a considerable estate. His will devised all of his

property to John Vannoy, whose mother had lived with Little, and it appointed Vannoy as the executor of his estate. The will declared that Vannoy had been Little's "good friend for 22 years" and had given him "personal care for the past 7 years."[1]

¶3 Vannoy published notice of the death in Seattle and Federal Way newspapers and held a public funeral at Evergreen Washelli. With the assistance of an attorney, he had the will admitted to probate on October 19, 1992. The court appointed Vannoy to administer the will with nonintervention powers.

¶4 The petition for probate named Vannoy as Little's only surviving heir:

> 5. Heirs, Legatees, and Devisees. The names, addresses, relationships, and ages of the heirs, legatees, and devisees who survived the decedent are:
>
> JOHN D. VANNOY

Clerk's Papers at 1.

¶5 The parties agree this statement was inaccurate. "Heirs," in the probate statutes, means "those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the real and personal property of a decedent on the decedent's death intestate." RCW 11.02.005(6). Under the statutes of intestate succession, Little's nieces and nephews were his heirs. *See* RCW 11.04.015.

¶6 Identifying the heirs accurately is important in probate administration because the personal representative has an obligation, within 20 days after being appointed, to give written notice of the pendency of the probate proceedings to "each heir, legatee and devisee of the estate . . . whose names and addresses are known to him or her." RCW 11.28.237(1).[2] Although Little and his nieces and

---

[1] Clerk's Papers at 5.

[2] "Within twenty days after appointment, the personal representative of the estate of a decedent shall cause written notice of his or her appointment and the

nephews had been out of touch for a long time, the record reflects that Vannoy was aware of at least one of them, a nephew named Byron Winn who lived in Seattle. Vannoy did not identify Winn or any other heir to the court, and he did not send any notices.

¶7 As personal representative, Vannoy also had a statutory obligation to use diligence in attempting to discover reasonably ascertainable creditors of the deceased. The version of the statute in effect in 1993, when Vannoy was administering Little's estate, provided that diligence would be presumed if the personal representative reviewed the deceased's correspondence and financial records and made inquiries with the deceased's "heirs." Former RCW 11-.40.012 (1993). Vannoy filed an affidavit on June 24, 1993, attesting that he had taken these steps, including making inquiries with the deceased's heirs. This too was inaccurate, as it is undisputed that Vannoy did not contact Little's heirs.

¶8 That same day, Vannoy filed an inventory and schedule of estate assets. Little's estate consisted of three separate parcels of real property located in the Seattle area, bank accounts, and other personal property. Vannoy valued the total estate at $1,056,177.90. He later filed a declaration of completion of probate, and the estate was closed on August 28, 1995, three years after Little's death.

¶9 The nieces and nephews were unaware of Little's death until September 2001. At that time, Sharon Baumgartner—one of the nieces—traveled from Colorado to Seattle for the funeral of Byron Winn, her brother. While in Seattle, Baumgartner attempted to reach Little to inform him of Winn's death. She went to property Little had owned on Vashon Island. There she learned from a neighbor that Little had been dead for a number of years. Baumgartner found the public probate file and saw that under the

pendency of said probate proceedings, to be served personally or by mail to each heir, legatee and devisee of the estate and each beneficiary or transferee of a nonprobate asset of the decedent whose names and addresses are known to him or her, and proof of such mailing or service shall be made by affidavit and filed in the cause." RCW 11.28.237(1).

category of "heirs, legatees, and devisees," Vannoy had listed only himself. Baumgartner and five other respondent heirs (all of whom are Little's nieces and nephews, or children of deceased nieces and nephews) eventually retained an attorney. Close to three years after learning of Little's death, they filed the present action to reopen the estate.

¶10 At the request of the heirs, the court entered an order on April 29, 2004, directing Vannoy to appear and show cause why the estate should not be reopened and why he should not answer questions and produce documents relating to his involvement in the preparation of Little's will, his administration of the estate, and Little's medical records. The heirs filed a lis pendens on May 5, 2004, attaching all the real property inherited by Vannoy.

¶11 After holding a hearing on June 8, 2004, attended by both Vannoy and Baumgartner along with counsel, a court commissioner found Vannoy had breached his duty to mail notice of pendency of the proceedings. Similarly, the Declaration of Completion had not been appropriately served on the heirs.[3] The court ordered the estate reopened, appointed a disinterested third party as the new personal representative, and directed her to mail notices of pendency of probate.[4] The court found insufficient evidence to support the heirs' alternative argument for reopening the estate on grounds of fraud and undue influence by Vannoy. Declining also to order discovery or production of Little's medical records, the court said, "all I'm going to do is appoint the [personal representative] . . . and you go where you will go from there."[5] The superior court denied without comment Vannoy's motion for revision. Vannoy appeals.

EFFECT OF FAILURE TO GIVE NOTICE TO HEIRS

¶12 Vannoy first contends that the heirs' action is an effort to show that the will is a product of undue influence

---

[3] Report of Proceedings at 21; *See* RCW 11.76.040.

[4] Clerk's Papers at 92.

[5] Report of Proceedings at 21.

or fraudulent representation by Vannoy and hence is time-barred by the statute that requires a will contest to be brought within four months of the probate.[6] Usually, the time for a will contest begins to run on the date the court admits the will to probate, but as Vannoy recognizes, the four-month statute of limitation is tolled when an interested party is not served with notice. *In re Estate of Toth*, 138 Wn.2d 650, 653, 654 n.2, 981 P.2d 439 (1999). Vannoy claims the tolling ceased when the heirs gained actual knowledge of the probate in September 2001, and they are barred because they waited more than four months past that date to file suit.

¶13 Vannoy mischaracterizes the action taken by the trial court. The heirs have not yet brought a will contest, and the trial court has therefore had no occasion to apply the law that governs will contests. The order from which Vannoy appeals appoints a new administrator and directs the mailing of notices of pendency of the probate—in effect starting the probate over again.

¶14 The law of reopening estates is derived from the law of vacating judgments. *Pitzer v. Union Bank of Calif.*, 141 Wn.2d 539, 552, 9 P.3d 805 (2000). There is a strong interest, grounded in considerations of finality, in not disturbing the sanctity of a closed estate. But in limited circumstances the interest of finality "must yield to concerns of justice and fairness." *Pitzer*, 141 Wn.2d at 551. Case law identifies two situations in which an estate may be reopened: upon a showing of extrinsic fraud or when a decree of distribution is void. *Pitzer*, 141 Wn.2d at 551. A decree of distribution (or a decree declaring a nonintervention probate complete, as we have in this case) is void, and vests title in no one, if there was a failure to give notice to a reasonably ascertainable heir entitled to notice. *Pitzer*, 141 Wn.2d at 551.

---

[6] Any person seeking to contest a will "shall appear within four months immediately following the probate." The failure to do so within this time frame renders the will "binding and final." RCW 11.24.010.

¶15 The failure to give due notice to heirs as required by statute is a denial of procedural due process that "amounts to a jurisdictional defect as to them, rendering the decree of distribution void." *Hesthagen v. Harby*, 78 Wn.2d 934, 942, 481 P.2d 438 (1971), cited in *Pitzer*, 141 Wn.2d at 552. Such a decree can be attacked at any time. *Pitzer*, 141 Wn.2d at 552 ("There is no time limit as a judgment entered without jurisdiction is void.") (citing Philip A. Trautman, *Vacation and Correction of Judgments in Washington*, 35 WASH. L. REV. 505, 530 (1960)).

> This is no more than an expression of the rule that only "decrees of distribution made . . . *upon due notice as provided by statute* are final adjudications having the effect of judgments . . . ." *Farley*, 10 Wn.2d at 70-71[7] (emphasis added).
>
> These historical rules are set against the fact that the law of reopening estates is derived from the law of vacating judgments. *In re Jones' Estate*, 116 Wash. 424, 426, 199 P. 734 (1921).

*Pitzer*, 141 Wn.2d at 552.

¶16 This court had occasion to apply *Hesthagen* in an appeal by two heirs from a final decree of distribution based on lack of notice to certain legatees. *See In re Estate of Walker*, 10 Wn. App. 925, 521 P.2d 43 (1974). The heirs who brought the appeal, the decedent's two sons, had themselves received all appropriate notices and had engaged in protracted litigation against their sisters who were the other two principal heirs. The four siblings finally stipulated to a final accounting in consideration of mutual waivers of further claims arising out of the estate. Notwithstanding their waiver, the sons objected to the order approving the final account, based on their discovery that notices of probate had not been sent to 16 unrelated legatees. The will had bequeathed $1,000 to each of these 16 legatees. The institutional administrator of the estate had decided not to notify them because the liquid assets of the estate were insufficient to cover the cash bequests. We

---

[7] *Farley v. Davis*, 10 Wn.2d 62, 71, 116 P.2d 263 (1941).

reversed the trial court's order approving the final account, holding that the insufficiency of the estate to cover the bequests did not justify overlooking the failure to notify the 16 legatees. In light of *Hesthagen*, there would be "a perpetual cloud on the property inherited by the four heirs who did participate in the administration." *Walker*, 10 Wn. App. at 930. We directed the reopening of the estate so that the 16 legatees could have an opportunity to challenge the order of distribution. *Walker*, 10 Wn. App. at 931-32.

¶17 At the same time, we declined to rule that *Hesthagen* rendered the entire administration of the estate a nullity or that it necessarily meant redoing two entire years of administration. In this context, we suggested that lack of notice made the decree voidable rather than void:

> We think use by the Supreme Court in *Hesthagen v. Harby*, *supra*, of the term "void" to describe the effects of the decree is unfortunate and that describing the effect as *"voidable"* would be a more apt designation. The superior court clearly has subject matter jurisdiction of the estate of one who dies leaving property within the county. CONST. art. [IV], § 6 (amendment 28). *See* RCW 11.16.050 *et seq.* Furthermore, the superior court has personal jurisdiction over the persons who appear in the proceedings whether or not they receive the requisite notices.

*Walker*, 10 Wn. App. at 930. We held that the four heirs who had appeared and participated in the proceedings from the beginning would be bound by those proceedings and specifically by their stipulation, except as necessary to protect the rights of the legatees who had not been notified. *Walker*, 10 Wn. App. at 931.

¶18 Searching for a way to marginalize the jurisdictional implications of *Hesthagen* for his administration of the Little estate, Vannoy seizes upon *Walker*'s suggestion that a decree rendered without notice is voidable rather than void. He attempts to infer from this comment a rule that the reopening of an estate will not occur except on a showing that those who did not receive notice had some substantive or tangible right in the estate. He argues that the lack of notice to Little's nieces and nephews does not render the declaration of completion void because what they are claim-

ing is merely a procedural right. This interpretation of *Walker* is incorrect. *Walker* fully comprehends the jurisdictional implications of *Hesthagen*. *Walker* does not support Vannoy's argument that a decision to reopen an estate for lack of notice should be governed by equitable considerations. *Walker* merely shows that when an estate is reopened upon a petition by individuals who were not given notice, persons who were duly notified and who have already had their rights in the estate adjudicated will not necessarily be entitled to a brand new start.

## WAS VANNOY REQUIRED TO PROVIDE NOTICE TO THE HEIRS?

■ ¶19 The respondent nieces and nephews did not provide evidence showing how Vannoy could have located them. Vannoy contends that without such evidence, the trial court's finding that he breached his duty to notify them of the probate must be reversed.

¶20 The pertinent statute requires an executor to notify heirs and distributees "whose names and addresses are known to him or her." RCW 11.28.237(1). Because the executor acts as a fiduciary, with a responsibility to make sure the court is aware of the names and respective interests of persons entitled under the law to receive the estate, an obligation of due diligence is implicit in the statute:

> Although the rule and statutes do not explicitly so state, we are satisfied that each and all contemplated that the heirs and distributees entitled to notice included those whose names and addresses were ascertainable by the exercise of due diligence on the part of the administrator or executor. In short, the rule and statutes presupposed that a personal representative, as an officer of the court and a fiduciary for the heirs and distributees, would make an earnest effort in the course of his trust to determine who would be lawfully entitled to the estate.

*Hesthagen*, 78 Wn.2d at 941. It is the failure to provide notice to heirs who are unknown to the executor but ascertainable through reasonable diligence that will render a decree of distribution void. *Hesthagen*, 78 Wn.2d at 942.

¶21 The record does not explain why the petition for probate of Little's will named only Vannoy as Little's heir and failed to acknowledge the existence of even one nephew or niece. Vannoy submitted a declaration that outlined the steps he did take after Little's death, but his declaration does not go into his awareness of the heirs or any efforts he may have made to find them. Vannoy was present at the hearing below, but he did not testify. According to remarks by counsel for Vannoy at the hearing, Vannoy shared information about Little's family tree with the attorney who filed the probate, and searched to some extent for Byron Winn. But Vannoy did not present any testimony from the probate attorney and neither did the heirs, who had made repeated efforts to contact him without success. And the record of the probate itself does not shed any light on the subject. Counsel for Vannoy acknowledged, in response to a question from the court, that he had made his "best presentation."[8] He discounted the heirs' suggestion of self-dealing by Vannoy and asserted that an equally available inference was incompetence on the part of the probate attorney.[9]

¶22 This record does not establish that the executor used due diligence as called for by *Hesthagen*. Vannoy takes the position that he should not, after so many years, have to come forward with evidence of his diligence. Rather, he contends, it was the duty of the nieces and nephews to come forward with evidence proving that they could have been identified and located with reasonable diligence. He points out that the heirs do not share the name of Little; they did not know exactly where Little lived; for years they were unaware of his death; and most of them live outside the state of Washington.

¶23 Vannoy in effect proposes that unnotified heirs have the burden of proving they were there to be found before an estate will be reopened. He has cited no authority for this proposition and we have found none. Below, he argued that

[8] Report of Proceedings at 3.

[9] Report of Proceedings at 3-5.

11 years was simply too long because memories become stale. The trial court found this argument unpersuasive:

> And who do we apply that theory against . . . ? The individual who didn't send out the notice to those who would have been able to take advantage of the information when it was fresh and available? Or against those who find out late in the game that in fact they might have had a claim, but now their evidence becomes more difficult to obtain because they were denied notice?[10]

¶24 We agree with the trial court. Allocating the burden of proof to the executor is more consistent with the executor's role as an "officer of the court and a fiduciary for the heirs." *Hesthagen*, 78 Wn.2d at 941. Because the executor has the fiduciary duty to identify and notify those who are statutorily entitled to receive notice, it logically follows that in the event of a later challenge based on lack of notice, the executor will have the burden of showing that he used reasonable diligence to discharge his duty. Otherwise, and especially where the executor of an estate has a beneficial interest in it, the sense of fiduciary duty might easily give way to a temptation to conduct a superficial search or none at all.[11]

¶25 We conclude that evidence showing how Vannoy could have located the nieces and nephews was not a prerequisite for reopening the estate for lack of notice to them. Vannoy, whose "best presentation" below included no evidence that he was diligent, was correctly found to have breached his duty to identify and notify these heirs of Martin Little. As a consequence, the decisions made in the

---

[10] Report of Proceedings at 19.

[11] In the related context of notice to creditors, an executor is presumed to have exercised reasonable diligence to ascertain creditors after conducting a reasonable review of the decedent's correspondence and financial records that are reasonably available. The executor may evidence the review by filing an affidavit and may obtain an order of the court declaring that creditors not identified by this review are not reasonably ascertainable. RCW 11.40.040. While there is no similar statute guiding the search for heirs and other distributees, filing an affidavit evidencing steps undertaken to search for them would seem to be indicated as good practice.

probate are void as to these heirs. The court did not err in ordering the reopening of the estate.

¶26 Affirmed. Vannoy's request for attorney fees on appeal is denied.

COLEMAN and KENNEDY, JJ., concur.

Review denied at 156 Wn.2d 1019 (2006).