[No. 34275. Department One. August 22, 1957.]

*In the Matter of the Estates of* THOMAS LELAND BORMAN *and* LOIS ELIZABETH GOULD BORMAN, *Deceased.*

EDITH BORMAN SCHAMBER, *Appellant,* v. JOHN THOMAS BORMAN *et al., Respondents.*[1]

[1]Reported in 314 P. (2d) 617.

*Brockman Adams, Max D. Crittenden,* and *Little, Le-Sourd, Palmer, Scott & Slemmons,* for appellant.

*Ryan, Askren & Mathewson, Laurance S. Carlson,* and *Douglas R. Hendel,* for respondents.

OTT, J.—Edith Borman Schamber is the daughter of Thomas Leland Borman, deceased, and Marjorie Miller Borman. In 1927, her parents separated. In the latter part of the 1930s or early in 1940, the decedent Thomas Leland Borman and the decedent Lois Elizabeth Gould started living together as husband and wife. No children were born to them. A marriage ceremony was performed in Covington, Kentucky, in 1940. Thomas Leland Borman was at that time married to Marjorie Miller Borman, and the marriage ceremony with Lois Elizabeth Gould had no legal significance. In 1945, Thomas Leland Borman and Lois Elizabeth Gould left the United States and lived abroad. While abroad, he was employed as an engineer for various construction companies.

During the time the parties lived together, several wills were made by them. October 10, 1950, Thomas and Lois executed wills in Paris, France. Thomas' will bequeathed all of his estate to Lois Elizabeth Gould, leaving one dollar to his daughter, Edith Schamber, "knowing Lois Elizabeth Gould Borman will provide for her in a fair and just manner."

June 11, 1952, Thomas and Lois, while temporarily in Washington, D. C., executed a joint codicil which provided as follows:

"We, Tom L. Borman, and Lois Gould Borman, husband and wife, residents of Capetown, South Africa, each being of sound and disposing mind and memory, in anticipation of death by a common disaster, do hereby make, publish and declare this to be our mutual act and 1st CODICIL to our will, *executed in November of 1950,* and now residing in our safety deposit box in the Pacific National Bank of Seattle, Seattle, Washington, hereby revoking all wills and codicils

previously made except the *said will of November, 1950,* above mentioned, as modified by this codicil.

"If my wife survive me for the space of one week, then, but not otherwise, I give, devise and bequeath all my real and personal estate to her absolutely and appoint her sole executrix of my will.

"If my husband survive me for the space of one week, then, but not otherwise, I give, devise and bequeath all my real and personal estate to him absolutely and appoint him sole executor of my will.

"It is the intention of this codicil that the survivor shall take, under the will, as modified by this codicil, a life estate in all the real estate and personal property of the one who first dies; provided, however, that in the event of a common disaster where neither survive the other for as long as one week, then the property of each, both real and personal, shall be divided as follows:

"1st. Mrs. Lois Janet Pettigrew shall receive all the personal effects (excluding the real estate and the stocks and bonds) in the possession of either of us at the time of our death, and particularly of the deceased Lois Gould Borman, irrespective of the value or amount thereof.

"2nd. Such personal effects described above not desired by the said Lois Janet Pettigrew, together with all the residue of the real estate or personal property possessed by either of us at the time of our decease, shall be distributed, share and share alike to the following named persons:

"Mr. John Thomas Borman, husband of Mrs. Lee Rogers Borman

"Mrs. Lois Janet Pettigrew, wife of Mr. M. E. Pettigrew

"3rd. That no part of the estate of either of us shall be distributed to Mr. or Mrs. Dale Schamber, or their descendants, and if either of such persons or their heirs or successors in interest shall seek to set aside the will, as modified by this codicil, or to impair, invalidate, or set aside its provisions, then we, and each of us, hereby give and bequeath to such person or persons the sum of one dollar in lieu of any other interest in the estate, but not otherwise.

"In all other respects we and each of us confirm *our will of November, 1950,* above described, as modified hereby.

"IN WITNESS WHEREOF, we have hereunto affixed our hands and seals this the 11th day of June, 1952.

> "[signed] Tom L. Borman (SEAL)
> "[signed] Lois Gould Borman (SEAL)"
> (Italics ours.)

Marjorie Miller Borman divorced Thomas Leland Borman in California on March 6, 1956. In the decree, she was awarded three thousand dollars in lieu of alimony payments.

Thomas Leland Borman was mortally stricken in Rome, Italy, on June 12, 1956, and was taken to a hospital, where he remained until his death on July 5, 1956. Two weeks prior to his death, while seriously ill in the hospital, he married Lois Elizabeth Gould.

Following the death of Thomas, Lois left Italy, and arrived in Los Angeles on or about September 7, 1956. On the day of her arrival, she drowned in a swimming pool accident.

The children of Lois Elizabeth Gould are John Frank Gould and Lois Janet Gould. In 1943, both children assumed the surname of Borman, and John's middle name was changed to Thomas. October 1, 1956, John Thomas (Gould) Borman petitioned the court to admit the wills to probate, to consolidate the estates of Thomas Leland Borman and Lois Elizabeth Gould Borman, and to appoint the Seattle-First National Bank as administrator with the wills annexed.

Edith Borman Schamber and Marjorie Miller Borman objected to the petition of John Thomas Borman and alleged, *inter alia,* that Edith Borman Schamber is the sole surviving child of Thomas Leland Borman; that Marjorie Miller Borman is a creditor of the estate of Thomas Leland Borman; that the decedent Lois Elizabeth Gould Borman left surviving her two children, and that, not being a resident of the state of Washington, Edith Schamber cannot qualify as administrator. The petition prayed that Walter Kane Scott, a resident of this state, be appointed administrator of the estate of Thomas Leland Borman and of the estate of Lois Elizabeth Gould Borman, or, in the alternative, that the estates be probated separately and that Walter Kane Scott be appointed administrator of the estate of Thomas Leland Borman, and that the petition of John Thomas Borman be denied.

John Thomas Borman, joined by his sister, Lois Janet Borman Pettigrew, answered the objections. The answer denied generally the allegations of the petition.

The cause proceeded to trial upon the issues thus joined. Following the hearing, the court, *inter alia*, (1) admitted the wills and the joint codicil to probate, (2) appointed the Seattle-First National Bank administrator with the wills annexed and directed the administrator to commence a declaratory judgment proceeding in order to have construed the wills and joint codicil of the decedents, (3) found that, at the time the wills and codicil were executed, the decedents were not acting under duress or undue influence, (4) found that there is no inherent conflict between the estate of the two decedents and that, therefore, the estates need not be probated separately at this time, and (5) denied the alternative petition of Edith Borman Schamber for the separate probate of the Thomas Leland Borman estate.

Edith Borman Schamber has appealed, assigning as error (1) the appointment of the Seattle-First National Bank as administrator with the wills annexed, (2) the entry of an order foreclosing appellant's right to contest the validity of the wills and codicil upon the ground of undue influence, (3) the finding that there is no inherent conflict between the two estates, and (4) the finding that the 1952 codicil modified the wills executed October 10, 1950, and adjudicating that the reference therein to wills executed in November, 1950, was a mistake.

(1) Did the court err in appointing the Seattle-First National Bank administrator with the wills annexed?

■ Corporations have only such powers as the legislature grants to them. *State ex rel. Washington Water Power Co. v. Murray*, 181 Wash. 27, 42 P. (2d) 429 (1935). The legislature specially disqualified corporations generally from acting as administrators or executors of estates by the following legislative act:

RCW 11.36.010 [*cf*. Rem. Rev. Stat., § 1457]: "The following persons are not qualified to act as executors or administrators: *Corporations, nonresidents of this state* . . . . : *Provided*, That trust companies regularly organized under

the laws of this state and national banks when authorized so to do may act as administrators or guardians of the estate of minors or other incompetents *upon petition of any person having a preference right to such appointment* and may act as executors or guardians when so appointed by will. . . . " (Italics ours.)

Trust companies and national banks have authority to administer upon estates only when so nominated in the testator's will, or upon a petition to the court for such appointment by a person "having a preference right to such appointment." The bank was not nominated by the testators in the instant case; hence, in order to be qualified to act as administrator, the nomination must be made by a person "having a preference right to such appointment."

What preferential right to "such appointment" is given to the respondents, both of whom are nonresidents of this state? Under the above statute, nonresidents cannot qualify as administrators. John Thomas Borman and Lois Janet Pettigrew do not have the statutory prerequisite to petition the court to appoint a national bank as administrator.

The respondents rely upon *State ex rel. Cowley v. Superior Court,* 158 Wash. 546, 291 Pac. 481 (1930), *In re Stotts' Estates,* 133 Wash. 100, 233 Pac. 280 (1925), and *Larson v. Stewart,* 69 Wash. 223, 124 Pac. 382 (1912). These cases do not support respondents' position. The issue of a nonresident requesting the appointment of a national bank or trust company as administrator was not involved in any of the cited cases. These cases hold that those having a beneficial interest in an estate are permitted to express their choice, and that the court should give weight to such request. They do not hold that the court, in giving weight to the wishes of those beneficially interested, can disregard the clear mandate of the statute and appoint an administrator who is, by statute, disqualified.

We conclude that a trust company or a national bank can be appointed administrator only upon the petition of a person who is himself qualified under the law to serve as such. The court is without authority, under the facts in this case, to appoint a national bank or trust company as

administrator, but does have authority to appoint any other person not specifically disqualified by RCW 11.36.010, *supra*.

(2) Did the court err in foreclosing the appellant's right to contest the validity of the wills and codicil?

The pleadings of the appellant were directed solely to the issue of the appointment of an administrator with the wills annexed, and the feasibility of separation of the estates for probate. Upon these issues, there was an adversary proceeding. Throughout the trial, counsel for the appellant advised the court that he had no desire to contest the wills at that time. A will contest proceeding may be commenced at any time within six months after the will has been admitted to probate. RCW 11.24.010 [*cf.* Rem. Rev. Stat., § 1385].

The respondents cite *Gordon v. Seattle-First National Bank*, 49 Wn. (2d) 728, 306 P. (2d) 739 (1957), as authority for the proposition that a will contest can be heard at the initial hearing for admission of a will to probate. In the *Gordon* case, at the time the will was offered for probate, the testatrix' competency to execute a will was made an adversary proceeding by the pleadings. We held that it was an abuse of discretion for the trial court to deny the will contest at the time the will was offered for probate.

In the instant case, the pleadings made no reference to the issue of undue influence, nor did they raise any issue contesting the validity of the wills. Further, at the time the wills and codicil were being identified for admission, counsel for the appellant stated that he had no objection to the introduction of the wills and codicil, provided that he was not thereby precluded from contesting them (the wills) at a later date, if the construction of the wills was unfavorable to appellant. This reservation was concurred in by counsel for the respondents and by the court.

 Under these facts, it was an abuse of discretion for the court to adjudicate the issue of undue influence.

(3) Although there may be some merit in appellant's contention that the estates were improperly consolidated for probate, appellant is in no position to assign error thereto. Appellant requested consolidation, provided that her rec-

ommended administrator was appointed. Further, the appellant proposed a finding that "there is no inherent conflict between the estates of Thomas Leland Borman and Lois Elizabeth Gould Borman, and therefore said estates need not be separated at this time."

■ Appellant cannot complain that the court entered a finding in accordance with her pleadings and request. *Hill v. King County,* 41 Wn. (2d) 592, 250 P. (2d) 960 (1952); *DeHaven v. Tomer,* 170 Wash. 524, 17 P. (2d) 21 (1932).

■ Did the court err in finding that the codicil modified the wills of October 10, 1950?

The testimony of the scrivener of the codicil was that it was executed in Washington, D. C., and that the wills which were to be modified by the joint codicil were in the decedents' safety deposit box in Seattle, Washington. The codicil itself makes reference to the modification of two *1950* wills which were so deposited. The testimony further shows that, when the wills were removed from the safety deposit box, the codicil was in the same box as the two wills of October 10, 1950. There were no other wills found bearing a 1950 date. Two other wills were found, both dated in 1943. It is the court's duty to determine which of the wills the testators intended to modify by the codicil. The court's determination that the codicil was to modify the wills of 1950, rather than the wills of 1943, is sustained by the evidence.

■ Respondents contend that appellant has no appealable interest in this proceeding for the reason that she has been disinherited by the will of her father. Whether she has been disinherited is an issue which has not yet been determined. The record reveals that the court has ordered a declaratory judgment proceeding for the purpose of construing these wills and the codicil to establish the interest of the various parties. Until the wills are construed, or their validity determined, we cannot say, as a matter of law, that the appellant has no beneficial interest in the estate of her father.

■ Finally, appellant is the sole heir of her deceased father and is his only living next-of-kin. The statute gives

her a right to contest the will of her father within six months of its admission to probate. RCW 11.24.010, *supra*. She was aggrieved by the court's order which denied her this right.

The cause is remanded with instructions to modify the order by removing the administrator therein appointed, and reserving to appellant the right to contest the wills and codicil.

HILL, C. J., FINLEY, and WEAVER, JJ., concur.

MALLERY, J. (concurring specially) — I concur in the opinion excepting that part which reverses the trial court's order foreclosing a will contest. Counsel admitted in open court that a contest had not been decided upon. The matter is moot.

———

December 17, 1957. Petition for rehearing denied.