IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN RE THE ESTATE OF: | ) | No. 30686-1-III |
| | ) | |
| GARTH BENJAMIN PETERSON, | ) | |
| | ) | UNPUBLISHED OPINION |
| Deceased. | ) | |

KULIK, J. — In the probate of their father's estate, heirs Rena and Lyndra Peterson moved to revoke the letters of administration and petitioned to be appointed co-personal representatives. They also objected to the personal representative's accounting and payment of a creditor's claim. The court denied their motions and overruled their objections. We affirm the trial court.

## FACTS

Garth Benjamin Peterson died without a will and none of his relatives petitioned to administer his estate. Eventually, the estate's principal creditor, Thomas Milby Smith P.S. (Smith P.S.), petitioned to have a personal representative appointed. The court appointed Smith P.S.'s president, Thomas Milby Smith.

At the outset of the case, Mr. Smith notified one heir, Rena Peterson, of his appointment. He later learned of three other heirs: Lyndra Peterson, David Peterson, and

Leigh Ann Yocum.[1] He notified each them of his appointment and continued to notify them of other filings.

Although the $210,000 estate was relatively modest, Mr. Smith spent considerable time and money administrating it. He hired a private investigator to locate the heirs and evicted Rena from the estate's real property. He also spent a significant sum of money dealing with the estate's property, which was numerous and generally in disrepair. He also spent much time responding to the motions and objections of Rena and Lyndra.

Mr. Smith eventually filed a motion to sell the estate's personal property, list the real property for sale, and require the heirs to retrieve personal property and family memorabilia that they wanted to keep. He mailed the heirs notice of the hearing and copies of his motions. None of the heirs filed bids or appeared at the hearing. The court granted Mr. Smith's motions.

Afterwards, Rena and Lyndra filed several motions. They both moved for reconsideration. They alleged that Mr. Smith failed to properly notify the heirs of his motions and that he violated a right of first refusal. Rena also moved for the court to recuse itself. The court denied both motions.

---

[1] For clarity, we refer to the heirs by their first names. We intend no disrespect.

2

Mr. Smith later filed a notice of intent to resign, request for approval of administration and final accounting, and distribution of estate funds. Rena and Lyndra, now represented by counsel, moved to be appointed substitute co-personal representatives and objected to Mr. Smith's motions on a variety of grounds. They argued Mr. Smith breached his fiduciary duty to the heirs, was disqualified from acting as personal representative because of his antagonism toward Mr. Peterson and the heirs, failed to properly inventory to estate, failed to notify Lyndra of the inventory, and accrued unreasonable fees. They also argued that the court lacked personal jurisdiction over the heirs and that Smith P.S.'s creditor's claim was invalid. The court overruled those objections and denied the motion to appoint Rena and Lyndra co-personal representatives.

Rena and Lyndra appeal the court's decisions on their motions and objections.[2]

## ANALYSIS

### I. PERSONAL JURISDICTION OVER THE HEIRS

The record reveals that Mr. Smith had some difficulty serving the heirs with notice of his appointment. The court appointed Thomas Milby Smith personal representative on September 3, 2010, and issued letters of administration of September 30. Mr. Smith mailed a notice of appointment to Rena Peterson, who was the only heir as far as he

---

[2] The facts pertaining to each motion and objection are laid out in more detail

knew, on October 7, 2010.

About one month later, Mr. Smith learned that Mr. Peterson had three additional children. Mr. Smith hired a private investigator to locate them and, in December 2010, he mailed them notices of the proceedings and his appointment. The notice to David was returned in the mail. Mr. Smith then got a new address for David in Portland, Oregon, and began mailing notices there.

In the summer of 2011, Rena and Lyndra supported their motions for reconsideration with the unsworn declarations of David and Leigh Ann. David said that he never received notice from Mr. Smith. He also disclosed a mailing address in Otis, Oregon. Leigh Ann said that she had not received notice of a hearing on July 26, 2011.

The record shows that there was no hearing on July 26. There was a hearing on July 22, and Mr. Smith mailed Leigh Ann notice of it. It also shows that Mr. Smith began mailing notices to David's Otis, Oregon, address once he learned of it.

On appeal, Rena and Lyndra argue that the trial court's orders should be vacated because Mr. Smith failed to properly serve the heirs and, therefore, the court never acquired personal jurisdiction over the heirs. This argument raises three issues: (1) whether David and Leigh Ann waived their lack of personal jurisdiction defense,

---

below.

(2) whether Mr. Smith exercised due diligence in locating the heirs, and (3) whether the final orders must be vacated to cure any jurisdictional defect.[3] We review these issues of law de novo. *See State v. Squally*, 132 Wn.2d 333, 340, 937 P.2d 1069 (1997).

A. *Waiver.* As an initial matter, Mr. Smith argues that any failure to strictly comply with the notice statute should be forgiven because the heirs waived notice by appearing in the case. Here, there is no dispute that Rena and Lyndra waived a lack of personal jurisdiction defense because they repeatedly sought affirmative relief from the court. The issue here is whether David and Leigh Ann waived their defense.

Mr. Smith relies on *In re Estate of Walker*, 10 Wn. App. 925, 521 P.2d 43 (1974) to argue that the heirs waived the defense. There, the court stated that "the superior court has personal jurisdiction over the persons who appear in the proceedings whether or not they receive the requisite notices." *Id.* at 930 (citing former RCW 11.16.083 (1965)). That statement was based on former RCW 11.16.083, which provided that "[a]ny person who submits to the jurisdiction of the court in any hearing shall be deemed to have waived notice thereof." That statute has been repealed. LAWS OF 1999, ch. 42, § 637 (effective Jan. 1, 2000).

---

[3] The argument also raises the issue of standing, which neither party addresses. We conclude that Rena and Lyndra have standing to assert David's and Leigh Ann's personal jurisdiction defense. *See In re Estate of Walker*, 10 Wn. App. 925, 931, 521

Nevertheless, "[a] party also waives any claim of lack of personal jurisdiction if, before the court rules, he or she asks the court to grant affirmative relief, or otherwise consents, expressly or impliedly, to the court's exercising jurisdiction." *In re Marriage of Steele*, 90 Wn. App. 992, 997-98, 957 P.2d 247 (1998); *see Kulman Equip. Co. v. Tammermatic, Inc.*, 29 Wn. App. 419, 424-25, 628 P.2d 851 (1981) (holding that party waived subject matter jurisdiction defense by filing a cross claim). A party does not waive a lack of personal jurisdiction claim by failing to appear. *Steele*, 90 Wn. App. at 998. But "[e]ven informal acts, such as written or oral statements to the plaintiff in the action can constitute an appearance." *State ex rel. Coughlin v. Jenkins*, 102 Wn. App. 60, 63, 7 P.3d 818 (2000). In *Jenkins*, the court held that the defendant had appeared by writing several letters to the plaintiff regarding the case. *Id.*

The facts here are distinguishable from those cases where courts held that parties had impliedly consented to the court's jurisdiction. While David and Leigh Ann did appear insofar as they submitted unsworn declarations in support of Lyndra's motion for a temporary restraining order, they did not communicate with Mr. Smith directly or ask the court for affirmative relief. We, thus, conclude that they did not waive their lack of personal jurisdiction defense.

---

P.2d 43 (1974).

6

B. *Due Diligence.* Because the personal representative is a fiduciary and officer of the court, he or she must exercise due diligence by making "an earnest effort in the course of his trust to determine who would be lawfully entitled to the estate." *Hesthagen v. Harby*, 78 Wn.2d 934, 941, 481 P.2d 438 (1971). Due diligence is a question of fact, unless reasonable minds could reach only one conclusion. *See State v. Hessler*, 155 Wn.2d 604, 608, 121 P.3d 92 (2005); *August v. U.S. Bancorp*, 146 Wn. App. 328, 343, 190 P.3d 86 (2008). Failing to abide by the notice statute, including failing to notify heirs unknown but ascertainable through due diligence, "is a denial of procedural due process that 'amounts to a jurisdictional defect as to [the heirs], rendering the decree of distribution void.'" *In re Estate of Little*, 127 Wn. App. 915, 921, 113 P.3d 505 (2005) (quoting *Hesthagen*, 78 Wn.2d at 942); *but see Walker*, 10 Wn. App. at 930 (noting that "voidable" is a more appropriate term because the court has subject matter jurisdiction regardless of whether it has personal jurisdiction). In *Little* and *Hesthagen*, the court concluded that decrees of distribution were void when administrators conducted no investigation whatsoever into the existence of heirs. *Little*, 127 Wn. App. at 925-26; *Hesthagen*, 78 Wn.2d at 942.

Here, the court found that Mr. Smith's overall efforts to locate the heirs constituted due diligence. There is nothing in the record showing that Mr. Smith made any attempt to

7

locate the heirs within 20 days after his appointment. However, the record shows that Mr. Smith was appointed September 3, was unavailable for about six weeks, notified Rena of his appointment on October 7, and began looking for other heirs in November. Given the need to determine who and where the heirs were, the court properly concluded that Mr. Smith exercised due diligence.

C. *Cure of Jurisdictional Defect.* But even if Mr. Smith did not exercise due diligence, there would be no need to vacate the court's final orders. In *Walker*, the court concluded that the entire proceeding was voidable as to 16 legatees who never received notice of the proceeding. *Walker*, 10 Wn. App. at 931. But because "all that has transpired in more than 2 years of administration would be a nullity and would have to be redone at great inconvenience, delay, and expense to the parties," the court created a procedure to "cure the 'jurisdictional' defect." *Id.* at 931-32. The court vacated the final orders and remanded the case with instructions that all heirs should be notified of a hearing to consider a final report and "a complete resume of all that has transpired in the estate, including, but not limited to, all orders entered by the trial court, including a copy of this opinion, the inventory and appraisement, and all accountings . . . necessary because of the passage of time." *Id.* at 931.

Under *Walker*'s reasoning, any jurisdictional defect as to Leigh Ann and David has been cured. Even if they did not receive timely notice of Mr. Smith's appointment, the record shows that Mr. Smith gave them notice of each filing and hearing in the case, including his final motions and hearing. It is, therefore, unnecessary to vacate the court's final orders.

II. MOTION FOR RECUSAL

Rena and Lyndra next contend that the judge assigned to the case, Judge Jerome Leveque, erred by refusing to recuse himself. Judge Leveque was assigned to preside over the case. Rena moved pro se for the judge to recuse himself because he was involved in litigation between Mr. Peterson and Smith P.S. She stated that when Judge Leveque was in private practice in the early 1990s, he arbitrated an attorney fee dispute between Smith P.S. and Mr. Peterson and awarded Smith P.S. the attorney fees. She also said that the fees were the basis of Smith P.S.'s creditor's claim.

Mr. Smith argued that recusal was unnecessary because the attorney fee case was unrelated to the issues of the estate. According to Mr. Smith, the only issue in the arbitration was whether Smith P.S. could have a judgment against Mr. Peterson for nonpayment for attorney fees earned in a civil suit in which Mr. Peterson prevailed.

The court denied Rena's motion, explaining, "I just don't have any memory of it and it doesn't sound to me like the issues are at all related to the matters that are before me today." Report of Proceedings (RP) at 60.

Rena and Lyndra contend that the trial court was disqualified under Canon 2.11(1) or (6)(a) of the Code of Judicial Conduct.

Canon 2.11 provides:

A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
    (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.
    . . . .
    (6) The judge:
    (a) served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer or a material witness in the matter during such association.

Section (6)(a) does not seem to apply here. Judge Leveque did not represent either Smith P.S. or Mr. Peterson and he was not associated with any lawyer who did. The only issue then is section (1).

We presume that a trial judge performs his or her functions without bias or prejudice. *State v. Perala*, 132 Wn. App. 98, 111, 130 P.3d 852 (2006) (quoting *Wolfkill Feed & Fertilizer Corp. v. Martin*, 103 Wn. App. 836, 841, 14 P.3d 877 (2000)). The test

10

for whether a judge's impartiality might reasonably be questioned is an objective one. *State v. Davis*, 175 Wn.2d 287, 306, 290 P.3d 43 (2012) (quoting *Sherman v. State*, 128 Wn.2d 164, 206, 905 P.2d 355 (1995)). It assumes that the reasonable person knows and understands all the relevant facts. *Id.* A "'mere suspicion of partiality'" may require recusal even if there was no resulting prejudice. *Id.* (quoting *Sherman*, 128 Wn.2d at 205). This is because "where a trial judge's decisions are tainted by even a mere suspicion of partiality, the effect on the public's confidence in our judicial system can be debilitating." *Sherman*, 128 Wn.2d at 205.

However, bald accusations are insufficient to show suspicion of partiality. *See In re Marriage of Meredith*, 148 Wn. App. 887, 903, 201 P.3d 1056 (2009). The moving party must still demonstrate potential bias or prejudice. *Davis*, 175 Wn.2d at 307-08. For example, in *State v. Dominguez*, the judge hearing a case had represented and later prosecuted the defendant. *State v. Dominguez*, 81 Wn. App. 325, 327, 914 P.2d 141 (1996). The defendant had also allegedly sued the judge for malpractice. *Id.* This court concluded that those facts alone were insufficient to show a potential bias. *Id.* at 329-30.

Here, Rena also failed to show any potential prejudice or bias on Judge Leveque's part. Like the moving party in *Dominguez*, she merely stated that the judge participated in past litigation. That fact alone does not show a potential prejudice or bias. Moreover,

11

the potential for prejudice here is even more remote than in *Dominguez* because Judge Leveque did not represent Mr. Peterson or Smith P.S. in their fee dispute. He merely arbitrated their dispute and did not remember the arbitration. Judge Leveque did not abuse his discretion by refusing to recuse himself.

## III. DISQUALIFICATION AS PERSONAL REPRESENTATIVE

Rena and Lyndra argue that the court erred by appointing Mr. Smith, and later Smith P.S., personal representative.

After the court appointed Mr. Smith, Rena and Lyndra argued that Mr. Smith was not a creditor of the estate and was, therefore, not entitled to be the personal representative. The court found that appointing Mr. Smith rather than Smith P.S. was a clerical or ministerial mistake. It entered a nunc pro tunc order appointing Smith P.S. personal representative.

Rena and Lyndra contend that: (1) the trial court violated statute by appointing Mr. Smith, rather than Smith P.S., personal representative, (2) the nunc pro tunc order correcting that error was invalid, and (3) Mr. Smith was not qualified to be personal representative because there was antagonism between him and at least some of the heirs.

We review statutory interpretation de novo and nunc pro tunc orders for an abuse

of discretion. *In re Estate of Blessing,* 174 Wn.2d 228, 231, 273 P.3d 975 (2012); *State v.*

*Hendrickson,* 165 Wn.2d 474, 478, 198 P.3d 1029 (2009). Ultimately, whether a court

correctly appointed a personal representative is a matter of discretion, and we will thus

review it for an abuse of discretion. *See In re Estates of Bormans,* 50 Wn.2d 791, 797,

314 P.2d 617 (1957).

A. *Order Appointing Mr. Smith.* RCW 11.28.120 gives certain people priority in

petitioning to administer the estate of a decedent who dies intestate. It provides that

"[o]ne or more of the principal creditors" is sixth in line to administer an intestate estate.

RCW 11.28.120(6).

The court incorrectly appointed Mr. Smith personal representative based on

RCW 11.28.120(6). It found "[t]hat [Smith P.S.] is a principal creditor of the Estate of

GARTH BENJAMIN PETERSON, and pursuant to RCW 11.28.120(6), Thomas M.

Smith, President of [Smith P.S.] is a person authorized by the laws of the State of

Washington to be an administrator of the Estate of GARTH BENJAMIN PETERSON."

Clerk's Papers (CP) at 15. Mr. Smith contends that the fact that Smith P.S. was a

creditor, and he was not, is a distinction without a difference because he is the sole

shareholder and president of Smith P.S. But there plainly is a difference because

13

RCW 11.28.120(6) applies to creditors, and Mr. Smith is not a creditor. It was error to appoint Mr. Smith under RCW 11.28.120(6).

B. *Nunc Pro Tunc Order.* The trial court corrected the error by finding that it had made a clerical or ministerial error and entering a nunc pro tunc order appointing Smith P.S. The parties dispute whether the nunc pro tunc order was valid. That depends on what kind of error the order corrected.

A nunc pro tunc order lets a court "date a record reflecting its action back to the time the action in fact occurred." *Hendrickson*, 165 Wn.2d at 478. "[W]here the record demonstrates that the court intended to take, and believed it was taking, a particular action only to have that action thwarted by inartful drafting, a nunc pro tunc order stands as a means of translating the court's intention into an order." *Id.* at 479. The order should memorialize an act that did occur, not one that should have occurred. *Id.* at 478 (quoting *State v. Smissaert*, 103 Wn.2d 636, 641, 694 P.2d 654 (1985)). In other words, "[a] nunc pro tunc order 'records judicial acts done at a former time which were not then carried into the record.'" *Id.* (quoting *State v. Petrich*, 94 Wn.2d 291, 296, 616 P.2d 1219 (1980)).

14

A nunc pro tunc order, however, cannot correct any error. It is appropriate to correct "only ministerial or clerical errors, not judicial errors." *Id.* at 479. Ministerial errors are errors in writing or record keeping. *Id.* They are not mistakes of law. *Id.* A court abuses its discretion when it uses a nunc pro tunc order "to change its mind or rectify a mistake of law." *Id.*

Entering the nunc pro tunc order here was an abuse of discretion because the order corrected a mistake of law. The court found that it made a clerical or ministerial error. But the record does not show that the court intended to appoint Smith P.S. and accidentally Mr. Smith. It shows that the court appointed Mr. Smith based on a misinterpretation of RCW 11.28.120(6). That is a mistake of law.

However, an error is not reversible if it is not prejudicial. *Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983). And an error is not prejudicial if it does not affect the case's outcome. *Id.* Regardless of Smith P.S.'s status as a creditor and the court's nunc pro tunc order, Mr. Smith was qualified to serve as personal representative under RCW 11.28.120(7).

That statute provides:

> If the persons so entitled shall fail for more than forty days after the death of the decedent to present a petition for letters of administration, or if it appears to the satisfaction of the court that there is no next of kin, as above specified eligible to appointment, or they waive their right, and there are no

15

principal creditor or creditors, or such creditor or creditors waive their right, then the court may appoint any suitable person to administer such estate.

RCW 11.28.120(7). Next of kin waive their right to administer an estate if they fail to petition for appointment within the statutory period. *Koloff v. Chi., Milwaukee & Puget Sound Ry. Co.*, 71 Wash. 543, 548, 129 P. 398 (1913). A creditor waives its right to administer an estate by petitioning for another's appointment. *In re Estate of Sullivan*, 25 Wash. 430, 439, 65 P. 793 (1901).

None of those entitled to administer Mr. Peterson's estate petitioned to do so within 40 days of Mr. Peterson's death and, because Smith P.S. petitioned to appoint Mr. Smith, Smith P.S. waived its right to administer the estate. Mr. Smith was, therefore, qualified to administer the estate as "any suitable person." Entering the invalid nunc pro tunc order is, therefore, not a reversible error.

C. *"Antagonism" Between Mr. Smith and the Heirs.* Rena and Lyndra next contend that Mr. Smith was not qualified to administer the estate because of antagonism between Mr. Smith and the heirs. Br. of Appellant at 23. They say that the antagonism is evidenced by a bar complaint that Mr. Peterson filed against Mr. Smith.

In an affidavit, Rena stated that Mr. Peterson and Mr. Smith had a dispute over attorney fees in the early 1990s. Mr. Peterson filed a bar complaint against Mr. Smith in 1991. Mr. Smith attempted to collect the fees from Mr. Peterson by garnishing a

16

judgment in Mr. Peterson's favor. At one point, Mr. Smith also obtained an order holding

Mr. Peterson in contempt and a bench warrant for Mr. Peterson. And, according to Rena,

she had become personally involved in the dispute. The trial court rejected Rena's and

Lyndra's argument that Mr. Smith was not qualified to serve as personal representative

due to antagonism.

A personal representative is a fiduciary and must therefore "exercise the utmost

good faith and diligence in administering the estate in the best interests of the heirs." *In

re Estate of Larson*, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985). Presumably, certain

people are statutorily disqualified from administering estates because they are

categorically unable to act as fiduciaries. *See* RCW 11.36.010. That statute provides that

minors, persons of unsound mind, persons convicted of crimes of moral turpitude, and

corporations that are not attorneys' professional service corporations cannot administer

estates. RCW 11.36.010. Otherwise, the court has broad authority to disqualify personal

representatives. It has "authority to appoint any other person not specifically

disqualified" by statute. *Bormans' Estates*, 50 Wn.2d at 797.

The record shows that Mr. Smith may have had reasons for antagonism: Mr.

Peterson's long standing debt, the bar complaint, and the heirs' lack of cooperation.

However, the potential for acting on antagonism did not automatically disqualify Mr.

Smith. He met the statutory qualifications for a personal representative. The court did not abuse its discretion by appointing Mr. Smith.

IV. INVENTORY AND DISPOSITION OF THE ESTATE'S PERSONAL PROPERTY

Rena and Lyndra argue that the court should have revoked the letters of administration because Mr. Smith mismanaged the estate's property. They contend that he: (1) failed to properly inventory the estate's property and provide Lyndra with a copy of the inventory and (2) failed to conduct a proper sale of the estate's property and notify Rena of the sale.

A. *Inventory.* The record showed that Mr. Smith filed an inventory on July 14, 2011. On September 19, 2011, Lyndra requested a copy of the inventory. The record does not show that Mr. Smith mailed Lyndra a copy of the inventory after she requested it, but it does show that he mailed her a copy before her request.

Normally, a personal representative must inventory and appraise all of the estate's property within three months after appointment. RCW 11.44.015(1). Any heir may request a copy of the inventory and appraisement, and the personal representative must provide the heir with a copy within 10 days. RCW 11.44.015(2). If the personal representative fails to timely inventory, appraise, or furnish an heir with a copy of the inventory and appraisal, the court may revoke the letters of administration and the

personal representative shall be liable on his bond to any party injured by the failure. RCW 11.44.050.

The record is clear that Mr. Smith failed to inventory the property within three months after his appointment. Because Mr. Smith was appointed on September 3, 2010, an inventory and appraisal was due by December 3. It was not filed until July 2011. Mr. Smith contends that the delay was due to his difficulty gaining access to the property and the property's poor condition. However, the record shows that aside from visiting the real property occasionally, Mr. Smith did not address the estate's property until late January 2011. The record also shows that, although Mr. Smith notified the heirs of his inventory in July 2011, he did not respond to Lyndra's September 2011 request for a copy of an inventory.

Nevertheless, whether to remedy Mr. Smith's failures is discretionary. *Clancy v. McElroy*, 30 Wash. 567, 568-69, 70 P. 1095 (1902). And Rena and Lyndra have not explained why the court's refusal to revoke the letters of administration was an abuse of discretion. Although Mr. Smith clearly filed his inventory late, he did provide Lyndra with a copy before she requested one, the heirs did not object to the late filing until months after the fact, and the heirs did not show that the late filing harmed them. The court did not abuse its discretion by declining to revoke the letters of administration.

19

B. *Sale.* Before moving to sell the estate's property, Mr. Smith spent considerable time cleaning, organizing, and disposing of property. The real property, which consisted of two houses, was in a state of disrepair. One had water damage and contained a great deal of personal property, much of it unusable. The other house had been vacant for years and was filled with tens of thousands of auto parts. Mr. Smith also determined that Mr. Peterson had about 40 classic cars. Mr. Smith paid for the property to be cleaned and sorted. He eventually collected bids on the personal property and began negotiating with real estate brokers about listing the houses for sale.

In the summer of 2011, Mr. Smith moved to sell the estate's personal property, list the real property, and require the heirs to retrieve personal property and family memorabilia that they wanted to keep. He notified the heirs of the bids on the property, his motions, and the date of the hearing on his motions. None of the heirs filed bids or appeared at the hearing. The court granted Mr. Smith's motions.

Rena and Lyndra now argue that the court incorrectly ordered sale of the estate's property because Mr. Smith improperly disposed of estate property by throwing away property he deemed unusable, sold property at prices that the heirs thought were too low, and failed to give Rena notice of sale, even though she requested it.

RCW 11.56.020 provides the court with broad discretion to order the sale of an estate's personal property. It states that the court

> may at any time order any personal property . . . of the estate sold . . . for the payment of debts of the estate or the expenses of administration or for the purpose of discharging any obligation of the estate . . . and such order may be made upon or without petition therefor, and such sales may be either at public or private sale or by negotiation and with or without notice of such sale, as the court may determine, and upon such terms and conditions as the court may decide upon. No notice of petition for sale of any personal property need be given, except as provided in RCW 11.28.240.

RCW 11.56.020. RCW 11.28.240(1)(a) requires a personal representative to notify a person who requests special notice of the "[f]iling of petitions for sales . . . of any property of the estate."

RCW 11.56.020 provided Mr. Smith with broad authority to dispose of estate property. Additionally, Mr. Smith gave all of the heirs, including Rena, notice of his intent to sell personal property. Under the circumstances, we cannot say that the court abused its discretion when it refused to revoke the letters or that Mr. Smith improperly disposed of the estate's property.

V. RIGHT OF FIRST REFUSAL TO PURCHASE ESTATE ASSETS

Rena and Lyndra argue that Mr. Smith breached his fiduciary duty because he agreed to give them a right of first refusal to purchase the estate's property, but did not honor that agreement.

21

Mr. Smith moved to sell a coin collection to Coins Plus for $12,300. At the hearing on the motion, Rena appeared pro se and asked, "[W]ould it help you guys if I sign something that said that I would like the right of first refusal to buy whatever it is that he wants to try to sell?" RP at 68. Mr. Smith replied, "Absolutely. That's implicit in a probate. If one of the heirs wants to buy the property in lieu of sale of it, absolutely." RP at 68. Aside from the coin collection, which Rena eventually bought, none of the heirs submitted bids on anything.

A right of first refusal entitles the owner of the right "to the opportunity to buy the subject property on the same terms contained in a bona fide offer from a third party acceptable to the [property] owner." *Bennett Veneer Factors, Inc. v. Brewer*, 73 Wn.2d 849, 856, 441 P.2d 128 (1968). It is a contractual right, governed by contract law. *Matson v. Emory*, 36 Wn. App. 681, 683, 676 P.2d 1029 (1984).

We are not convinced that any right of first refusal existed. The record shows that Rena offered to "sign something that said that I would like the right of first refusal to buy whatever it is that he wants to try to sell." RP at 68. Mr. Smith responded by stating his belief that a right of first refusal was "implicit" in any probate. RP at 68. That exchange does not evidence a meeting of the minds and nothing in the record shows that there was consideration for a right of first refusal. Additionally, Rena and Lyndra offer no authority

22

to support the notion that an heir implicitly has a right of first refusal in a probate proceeding. Here, there was no right of first refusal and, therefore, no breach of that right and no resulting breach of fiduciary duty.

## VI. PERSONAL REPRESENTATIVE'S CREDITOR'S CLAIM

Rena and Lyndra also challenge approval of Smith P.S.'s claim against the estate. Smith P.S. filed the creditor's claim in September 2010. Mr. Smith eventually filed a motion for approval of the creditor's claim, set a hearing on the motion for February 4, 2011, and notified the heirs of the hearing. None of the heirs appeared, and the court granted the motion.

Later, Rena and Lyndra argued that the court incorrectly approved the claim because Mr. Smith did not comply with statutory notice requirements that apply when a creditor is also the personal representative. Smith P.S. responded by filing a petition for approval of his creditor's claim. He notified the heirs of the petition on October 14, 2011, and he set a hearing for December 2.

Rena and Lyndra then replied to the petition by alleging that Mr. Smith was not a creditor of the estate and, therefore, not entitled to letters of administration. As mentioned above, the court then entered a nunc pro tunc order appointing Smith P.S. It again approved Smith P.S.'s creditor's claim.

Rena and Lyndra contend that approving the claim was erroneous for five reasons: (1) Mr. Smith is not a creditor, (2) the personal representative bond covered Mr. Smith and not Smith P.S., (3) the court's nunc pro tunc order appointing Smith P.S. personal representative was invalid, (4) Mr. Smith and Smith P.S. failed to disclose their antagonism toward the Petersons, and (5) the claim does not meet statutory requirements. While the first four contentions relate to the appointment of a personal representative, there is no relationship between those contentions and Smith P.S.'s creditor's claim. We will address only whether the creditor's claim satisfies the statutory requirements for such claims.

Every creditor's claim must comply with RCW 11.40.070. That statute provides that the claim be signed and contain certain information, including the creditor's name and address, the amount of the claim, and the basis of the claim. *See* RCW 11.40.070. Smith P.S.'s claim complies with all of those statutory requirements.

Rena and Lyndra also contend that Smith P.S. failed to comply with special rules that apply to personal representatives who are creditors. Personal representative creditors must comply with RCW 11.96A.080 in addition to RCW 11.40.070. RCW 11.40.140. RCW 11.96A.080(1) provides that "any party may have a judicial proceeding for the declaration of rights or legal relations with respect to any matter." That provision

is part of the Trust and Estate Dispute Resolution Act, chapter 11.96A RCW, which requires that a petition be served on or mailed to all parties at least 20 days prior to the hearing on the petition. RCW 11.96A.110(1).

All things considered, the court did not err by approving Smith P.S.'s claim. In February 2011, the court approved Smith P.S.'s claim while Mr. Smith was acting as personal representative. At that time, the personal representative (Mr. Smith) was not the creditor (Smith, P.S.), so there was no need to comply with RCW 11.40.140. When the court approved the creditor's claim for a second time, the nunc pro tunc order appointing Smith P.S. had been filed, Smith P.S. had served the heirs by mail with a petition to approve its claim, and it had given the heirs more than 20 days' notice of the hearing. Regardless of whether Smith P.S. or Mr. Smith was personal representative, the heirs received proper statutory notice.

## VII. PERSONAL REPRESENTATIVE'S FEES

Rena and Lyndra next argue that the court erred by awarding Mr. Smith attorney fees and costs of $72,868.04. They contend that the estate should not have to pay the fees because Mr. Smith breached his ethical duties as an attorney and his fees were excessive.

In an affidavit, experienced probate attorney Charles Cleveland opined that Mr. Smith's costs and attorney fees of $56,575.61 were excessive and that an estate of that size should not cost more than $5,000.00 to administer.

The record also shows that the estate's property was worth about $210,000. Mr. Smith's invoice shows that he spent about 662 hours on the estate, either as attorney or personal representative. It also shows that he spent considerable time dealing with the estate property and responding to the heirs' motions and objections. It also shows that he spent $11,000 on supplies and labor to clean up the real property, to consult with a lawyer, to hire a private investigator to find the heirs, and on copies and postage.

The trial court ordered that the fees should be paid. It found that Mr. Smith properly segregated his work as personal representative and his work as attorney and hourly fees of $45.00 and $180.00, respectively, were reasonable. The court also found that the sum of those fees, which had increased to $72,868.04, "is a reasonable sum to compensate the Administrator for the considerable attorney fee time and administrative work, court hearings, and monies advanced by the administrator especially given the circumstances of this probate." CP at 1283.

Rena and Lyndra argue that the fees should be disgorged because Mr. Smith violated his ethical duties as an attorney and that his fees were unreasonable. This court

will generally not interfere with an award of attorney fees in a probate case unless the facts and circumstances clearly show that the trial court abused its discretion. *Larson*, 103 Wn.2d at 521.

A. *Disgorgement.* A party damaged by an attorney's breach of ethical duty may bring a claim for disgorgement. *Meryhew v. Gillingham*, 77 Wn. App. 752, 755, 893 P.2d 692 (1995). However, this court will generally not consider an issue for the first time on appeal. RAP 2.5(a). Rena and Lyndra did not argue for disgorgement in the trial court, so they are not entitled to argue it now.

B. *Reasonableness.* Rena and Lyndra also suggest that the award should be reduced because it is unreasonable. They point out that Mr. Smith spent over $70,000 administering the estate, but Charles Cleveland, an experienced probate attorney, believed that the administration should cost about $5,000.00.

Because the record before this court is the same as that before the trial court, this court sits in the same position as the trial court when it determines the reasonableness of fees. *Larson*, 103 Wn.2d at 521.

The court shall award "just and reasonable" compensation to a personal representative for his services as personal representative and to an attorney performing services for an estate. RCW 11.48.210. Whether fees are reasonable depends upon

> the amount and nature of the services rendered, the time required in performing them, the diligence with which they have been executed, the value of the estate, the novelty and difficulty of the legal questions involved, the skill and training required in handling them, the good faith in which the various legal steps in connection with the administration were taken, and all other matters which would aid the court in arriving at a fair and just allowance.

*In re Estate of Peterson*, 12 Wn.2d 686, 728, 123 P.2d 733 (1942).

The court found that Mr. Smith properly segregated his work as personal representative and his work as attorney, his hourly fees were reasonable, and that the sum was reasonable "especially given the circumstances of this probate." CP at 1283. Rena and Lyndra argue that the sum was unreasonable because Mr. Cleveland opined that $5,000.00 was a reasonable fee for administering an estate of this size. That opinion is important, but it addresses only one of many factors that affect the reasonableness of fees. In light of the court's findings and the heirs' argument, we cannot conclude that the fees were unreasonable.

## VIII. BREACH OF FIDUCIARY DUTY

On the basis that Mr. Smith had breached his fiduciary duty to the heirs, Rena and Lyndra objected to Mr. Smith's motions for approval of administration and final accounting and distribution of estate funds. They alleged that Mr. Smith breached the duty by incurring unreasonable fees, not being disinterested, violating various provisions

of the probate code, violating the right of first refusal, and by not selling the estate property for enough money. The court found "the filed objections have not proven any neglect, negligence, breach of fiduciary duty or improper administration of the estate and therefore finds the objections are without merit." CP at 1284.

On appeal, Rena and Lyndra again argue that Mr. Smith breached his fiduciary duty. Whether a party breaches a fiduciary duty is a question of fact. *O'Brien v. Hafer*, 122 Wn. App. 279, 284, 93 P.3d 930 (2004) (quoting *Uni-Com Nw. Ltd. v. Argus Publ'g Co.*, 47 Wn. App. 787, 796, 737 P.2d 304 (1987)). Challenged findings are reviewed for substantial evidence. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). However, unchallenged findings are verities on appeal. *Id.*

Moreover, "[a] separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." RAP 10.3(g). It is also preferable for a party to "type the material portions of the text out verbatim or include them by copy in the text or in an appendix to the brief." RAP 10.4(c). Challenges that do not comply with RAP 10.3(g) or RAP 10.4(c) are likewise treated as verities on appeal. *Asarco, Inc. v. Dep't of Ecology*, 145 Wn.2d 750, 764, 43 P.3d 471

29

(2002).

Here, the finding that Mr. Smith did not breach his fiduciary duty is a verity on appeal. Rena and Lyndra assigned error to the court's entire order, but they did not assign error to the court's finding. And, although they argue that Mr. Smith breached his fiduciary duty, they do so without ever addressing whether substantial evidence supported the court's finding. We must, therefore, assume that Mr. Smith did not breach his fiduciary duty. Because the court found that Mr. Smith had not violated his fiduciary duty, we cannot conclude that the court's refusal to revoke the letters of administration was an abuse of discretion.

IX. MOTION TO BE APPOINTED CO-PERSONAL REPRESENTATIVES

Finally, Rena and Lyndra contend that the court erred by refusing to appoint them co-personal representatives. The court found that Rena and Lyndra were "individually unsuitable" and stated that it would "appoint a new non-family person to continue with the Administration of the Estate." CP at 1285.

We review that decision for an abuse of discretion. *See In re St. Martin's Estate*, 175 Wash. 285, 289, 27 P.2d 326 (1933). Statute provides that the next of kin is "entitled" to letters of administration unless a surviving spouse or registered domestic partner has also applied for letters. RCW 11.28.120. However, the right to letters is not

absolute. *St. Martin*, 175 Wash. at 289. The court may refuse to issue letters "when there is a substantial reason requiring it." *Id.*

Here, the court found that Rena and Lyndra were "not suitable to be appointed." CP at 1267. Rena and Lyndra have not challenged that finding. And that finding supports the court's decision to not appoint Rena and Lyndra. The court did not abuse its discretion.

## X. ATTORNEY FEES

Both parties seek attorney fees on appeal. RAP 18.1(a) provides that a party is entitled to attorney fees on appeal if applicable law grants the party the right to recover reasonable attorney fees on review.

Rena and Lyndra seek attorney fees under RCW 11.28.250 and RCW 11.28.070. RCW 11.28.250 lists the grounds for revoking letters of administration. RCW 11.68.070 provides that the court may award reasonable attorney fees to a party who successfully restricts the powers of or removes a personal representative with nonintervention powers. An award of attorney fees on appeal is not warranted under those provisions.

Mr. Smith seeks attorney fees "for having to defend against a meritless appeal." Br. of Resp't at 47. We likewise conclude that Mr. Smith is not entitled to attorney fees on appeal.

31

No. 30686-1-III
*In re Estate of Peterson*

We affirm the trial court.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____          _____
Korsmo, C.J.                                      Siddoway, J.

32