IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Estate of<br><br>LILLIAN MAE TYMONY,<br><br>                  Deceased,<br><br>JUDY GRAY,<br><br>                Respondent,<br><br>      v.<br><br>CRAIG TYMONY,<br><br>                Appellant. | No. 82909-2-I<br><br>ORDER WITHDRAWING OPINION AND SUBSTITUTING OPINION |

The court having been apprised of a scrivener's error on page 2 of the opinion entered June 21, 2022, it is hereby

ORDERED that the opinion shall be changed to reflect the correct spelling of Craig Tymony Jr.'s last name on page 2.  It is further

ORDERED that the opinion filed on June 21, 2022, is withdrawn and a substitute opinion shall be filed.

_____ Smith, A.C.J.


_____     _____

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of<br><br>LILLIAN MAE TYMONY,<br><br>Deceased,<br><br>JUDY GRAY,<br><br>Respondent,<br><br>v.<br><br>CRAIG TYMONY,<br><br>Appellant. | No. 82909-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, A.C.J. — Lillian Tymony's estate is the subject of an intestacy probate action, a will probate action, and a Trust and Estate Dispute Resolution Act, ch. 11.96A RCW, (TEDRA) petition challenging the validity of the will. The court granted the TEDRA petition and dismissed the will probate. But an heir named in the will was not joined in the TEDRA action, and the authority cited by the court in granting the petition does not provide a basis to invalidate a will. We therefore reverse.

**FACTS**

Lillian Tymony executed a will on June 22, 2005, witnessed by three of her children: Craig Tymony, Clifford (Cliff) Tymony, and Diane Anderson. It was notarized by Efren Pascua. The witnesses disagree about the circumstances

Citations and pin cites are based on the Westlaw online version of the cited material.

under which the will was signed. Cliff[1] claims the witnesses and notary signed the will at a Wells Fargo bank outside of Lillian's presence. Craig and Diane attest that it was signed in her presence, and Pascua confirms their assertion.

Article III of the will addresses the disposition of Lillian's estate, and specifically the disposition of her ownership in two houses on South Angeline Street:

> I Lillian Tymony give consent for all my asset[s] to be distributed] as follows[:] the house at 2502 [S.] [A]ngeline [St.] and the property set on Quit Claim Deed to Sharon Tymony or will[ed] to her. The house at 2442 [S.] [A]ngeline [St.] be divi[d]ed equall[y]. I do not want the house sold unless executor Craig Tymony said to. Each other assets divi[d]ed equal[ly] among my children.

The will appointed Craig as executor and extended broad powers to him in that role through its nonintervention clause.[2] In the event that Craig could not perform his duties as executor, Lillian directed that either her son Patrick Tymony—now deceased—or Craig Tymony Jr. be appointed in his stead. She also expressed her desire that any child who contested her will should be disinherited.[3]

---

[1] Because the parties share the same last name, we refer to them by their first name for clarity.

[2] A personal representative granted nonintervention powers is granted authority to, without order court order, settle debts, perform the decedent's contracts, and distribute the estate. RCW 11.68.090. They have "the power to construe and interpret the terms of a probated will, except as the probated will or an order of the court may otherwise direct." RCW 11.68.130. The court's power to oversee or supersede the representative's decisions is limited. In re Estate of Jones, 152 Wn.2d 1, 9, 93 P.3d 147 (2004). Oversight is confined primarily to instances in which the representative is abusing their position. RCW 11.68.070.

[3] Lillian's will states:

[A]ny of my children that go against my wishes by bringing attorney in I want them cut out of my will. The kids will [be] responsible for the taxes. My wish is that Clifford Tymony & Diane Anderson

Lillian died on December 31, 2013. Though Craig had been appointed executor of Lillian's will, he did not initiate probate in the years following her death; he attributes this to her strong admonition against involving attorneys. Regardless, the terms of the will appear to have been followed. In particular, Cliff and Diane lived at the 2442 S. Angeline St. property until Cliff left in 2020 under disputed circumstances.

The legal proceedings leading to this appeal began when Judy Gray initiated the first of three actions relating to her mother's estate. She petitioned for intestate probate, and was appointed as the administrator of Lillian's estate in December 2020. Her petition denied knowledge of any will. Judy listed five intestate heirs and provided notice to them: Patricia Tymony, the widow of Lillian's son Fred; Diane; Cliff; Craig; and herself. She did not provide notice to the three children of Lillian's deceased son Patrick or to Sharon Tymony, Craig's ex-wife, who had been listed in the will.[4]

In response to Judy's probate action, Craig initiated a second probate, this time under the will. Apparently on the advice of his then counsel, Craig did not inform the court of the first probate proceeding. The schedule of heirs and

---

[have] the right to live at 2442 [S.] [A]ngeline [S]t. as needed[.] [L]et me make this clear. I want no contestment or decision from Theresa Patrick, Fred Tymony, Judy Gray. I want no contesting from the three name[s] above."

Given this language, an argument exists for the proposition that Judy's actions challenging the will may lead to her disinheritance on remand.

[4] Judy contends she was not aware of the will at the time she filed for intestate probate. Craig asserts that Judy was aware of the will and of Craig's role as executor.

3

distributees included with Craig's petition listed Lillian's children and grandchildren but excluded Sharon.

Judy subsequently began a third proceeding on May 10, 2021, this time under the TEDRA statute, contesting the validity of the will and the letters testamentary issued to Craig. Her petition made several claims: (1) relying on a declaration from Cliff, it asserted that the witnesses to the will had signed outside Lillian's presence and that the will was invalid as a result; (2) because all signing witnesses stood to inherit, a statutory presumption that they had unduly influenced Lillian existed, and so the witnesses should receive only what they would have under laws of intestacy; and (3) Craig opened the second probate action in bad faith, without disclosing the existence of the first probate, and should bear the legal fees in all three proceedings as a result.[5]

Though Judy's requested remedy was that "[t]he probate of the invalid will should be revoked and annulled [and] the intestate probate should carry on," her only legal argument explicitly addressing the will's validity was the first of the three listed above. Her petition was supported by declarations from Cliff and from Judy's attorney but not from Judy herself, and did not include a copy of the challenged will. A declaration of service supporting the petition indicated that Lillian's surviving children and grandchildren were given notice of the TEDRA action, but that Sharon was not.

---

[5] The petition also argued that Craig was failing to administer the will by its own terms, though it did not continue on to a related legal conclusion.

4

Craig moved to dismiss the TEDRA petition under CR 12(b)(6). He asserted that Judy bore the burden to prove the invalidity of the will and that Cliff's declaration alone was insufficient to meet that burden because it was contradicted by Craig and the notary.[6] The motion to dismiss was supported by: (1) the inclusion of a copy of the will; (2) a declaration from Craig, in which he asserted that Judy and Cliff were both aware of the will prior to the intestate probate action and that he had faithfully executed the will; (3) a declaration from Efren Pascua that he had notarized the will at Lillian's residence with Lillian and all three witnesses; and (4) a declaration from Diane supporting the above and contesting a number of Cliff's factual assertions.

Judy's reply requested that the matter be resolved at the initial TEDRA hearing. It did not revisit her argument that the will was invalid because the witnesses had signed outside of Lillian's presence. Instead, it focused on the presumption of undue influence created by statute, denied that the presumption had been rebutted by the motion to dismiss,[7] and concluded that as a result "Craig, Clifford, and Diane must take only what they would receive if the Alleged Will did not exist." It argued that "[t]o accomplish this, the Court need only terminate the improper probate of the Alleged Will, ratify the intestate probate, and allow Judy Gray to administer the probate."

---

[6] Craig also asserted that Judy was barred from recovery under the "unclean hands" doctrine and that she lacked "standing."

[7] It is true that the motion to dismiss did not directly address the presumption at any point.

At the TEDRA hearing, Craig's attorney emphasized that Judy bore the burden to demonstrate undue influence in order to invalidate the will and contended that her petition had not met that burden. Judy's attorney largely conceded that point: "I believe counsel is right that if we needed to prove undue influence, perhaps we have not done that yet." But, notably, he confused the matter by implying that the burden to demonstrate a valid will fell on Craig: "the notary in and of itself is not sufficient to *create* a valid Will." (Emphasis added.)

The bulk of argument, though, focused on the statutory presumption that the interested witnesses had exercised undue influence over Lillian. Counsel for Judy, in this context, made a number of arguments that ignored the difference between using the statutory presumption of undue influence to ensure that the interested witnesses received only as much as they would have under intestacy, and using a demonstration of undue influence to fully invalidate the will, ultimately concluding:

> These interested witnesses subscribed this Will that there is a presumption raised under RCW 11.12.160. And as a result, the interested witnesses–and everybody else–should take under the laws of intestacy. That's the proper legal result. We already have an intestate probate here. We need to close the second redundant probate and administer under the intestate probate. Nobody will be prejudiced by that.

Neither the commissioner nor the attorney for either side addressed whether inheritance under intestacy would affect the rights of Cliff and Diane, to whom the will granted a life estate in Lillian's residence, or Sharon, who had been gifted one of Lillian's properties.

The commissioner denied the motion to dismiss, ruled that Judy had

6

standing to sue as a beneficiary of the estate, and concluded that Craig had not rebutted the statutory presumption of undue influence. He annulled the second probate, removed Craig as its administrator, and directed that Judy administer Lillian's estate under the laws of intestacy. Finally, he ordered that Craig pay all legal fees and costs associated with both probates and the TEDRA action because his failure to timely probate "added unnecessary cost and complexity to these proceedings."

In support of his rulings, the commissioner issued a number of findings of fact and conclusions of law, many of which Craig challenges on appeal.[8] The commissioner's reasoning followed the arguments made by Judy's attorney. It relied on the statutory presumption of undue influence to assert that the interested witnesses should receive no more than they would have under

---

[8] Craig challenges findings/conclusions: 2 (regarding Lillian's dementia); 4 (asserting notice was properly served on all intestate heirs in the first proceeding; 12 ("The TEDRA Petition raised a presumption under RCW 11.12.160(2) that, because three out of four subscribing witnesses to the Challenged Will were interested witnesses, the Challenged Will was procured by duress or undue influence."); 14 (The Motion to Dismiss did not rebut the presumption raised under RCW 11.12.160(2)); 15 (interested witnesses must take only what they would have received through intestacy); 17 (matter governed by RCW 11.12.160, which directs that interested witnesses take no more than they would have received under intestacy); 19 (adequate notice has been given and court had "full and ample power" to resolve matters); 20 ("the only individuals who would be negatively affected by distribution of the Decedent's estate under the laws of intestacy are the interested witnesses, none of whom have met the burden to prove the validity of the Challenged Will, and all of whom are legally required to take nothing more than what they would receive under the laws of intestacy. Therefore, an order requiring the Decedent's estate to be distributed according to the laws of intestacy will not alter the legal rights of Craig Tymony, Clifford Tymony, and Diane Tymony"); 21 (finding administration under first probate proper); and 22 (Craig's failure to probate in eight years after Lillian's death justified attorney's fees award).

intestacy. It denied that they had rebutted this presumption. It found that they were "the only individuals who would be negatively affected by distribution of the Decedent's estate under the laws of intestacy." And the commissioner's order therefore directed that the estate be administered under the first probate action per the laws of intestacy.

## ANALYSIS

Three central issues are present in this appeal. First, whether the proceedings below included all the parties necessary for the court to exercise its authority. Second, whether the court's invalidation of the will was done on proper legal grounds. Third, whether the court's award of attorney fees exceeded its authority. We vacate the court's order, reverse, and remand for lack of requisite jurisdiction. Because other legal issues present in the court's order may reoccur on remand, we also address them.

### Ripeness for Review

As a preliminary matter, we address Judy's argument that this matter is not ripe for appeal because a motion to reconsider the court's ruling is pending, making judgment not final. She cites to RAP 2.2(a)(1), which generally permits review only from final judgments.

But RAP 7.2(e) governs here. Where a court seeks to rule on a modification motion that would "change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision." RAP 7.2(e). A party on appeal can

move to obtain the appellate court's permission. RAP 7.2(e). That has not happened here. This matter is therefore ripe for appeal.

## Standard of Review

Where the trial court has made no credibility determinations and the written record below is not too sizable for the appellate court to consider in full, we review the conclusions made below de novo. Smith v. Skagit County, 75 Wn.2d 715, 718, 453 P.2d 832 (1969) ("[W]here the record both at trial and on appeal consists entirely of written and graphic material . . . and the trial court has not seen nor heard testimony requiring it to assess the credibility or competency of witnesses, and to weigh the evidence, nor reconcile conflicting evidence, then on appeal a court of review stands in the same position as the trial court in looking at the facts of the case and should review the record de novo."); Dolan v. King County, 172 Wn.2d 299, 311, 258 P.3d 20 (2011) (noting that "Washington has thus applied a de novo standard in the context of a purely written record where the trial court made no determination of witness credibility" but applying a substantial evidence standard because of many thousands of pages of documentary evidence).

Here, because the record consists of a short hearing transcript and filed briefs, and because no live testimony was taken or credibility determinations made and weighed, de novo review is appropriate.

## Jurisdiction of the Court

Craig contends that because Sharon did not receive notice of any of the proceedings below, the court lacked jurisdiction and any final order is void. He is

9

correct. Since Sharon is a party whose interest in the disposition of Lillian's estate is clear on the face of the will, she must be joined to any action concerning the will.

Any party contesting a will must give notice to "all legatees named in the will . . . and to all persons interested in the matter." RCW 11.24.020. Interested persons are those who are "legally or beneficially interested in the estate." RCW 11.96A.030(6). See also In re Estate of Becker, 177 Wn.2d 242, 247, 298 P.3d 720 (2013). Failure to give notice "to a reasonably ascertainable heir entitled to notice" means that the probate's ultimate decree of distribution " 'is void and does not vest title in anyone.' " Pitzer v. Union Bank of California, 141 Wn.2d 539, 552, 9 P.3d 805 (2000) (quoting Hesthagen v. Harby, 78 Wn.2d 934, 944, 481 P.2d 438 (1971)). This principal applies equally to distribution decrees and other decrees declaring nonintervention probates complete. In re Estate of Little, 127 Wn. App. 915, 508, 113 P.3d 505 (2005). The jurisdictionally deficient order may be contested at any later time. Pitzer, 141 Wn.2d at 551.

Here, where Sharon was not only a named beneficiary of the will, but was in fact the first named beneficiary—gifted Lillian's house at 2505 S. Angeline St.—any reading of the will provides that she is a reasonably ascertainable heir.[9] She must be given notice of any action, TEDRA or probate, in which the will is at

---

[9] Judy asserts that the real estate at 2502 S. Angeline Street and Sharon's interest in it are "newly discovered" evidence that should not be considered on appeal. RAP 9.11(a), to which she cites, governs when the appellate court may "direct that additional evidence on the merits of the case be taken before the decision of a case on review." But this court is not considering, or contemplating considering, any evidence not before the trial court: the 2502 property and Sharon's interest in it are clearly included in Lillian's will.

issue. The record does not reflect, nor has any party asserted, that Sharon was joined in either relevant action—the will probate or the TEDRA petition.[10] Consequently, the court lacked jurisdiction to enter any sort of decree resolving the will probate action.

We therefore vacate the court's order granting Judy's TEDRA petition, reverse, and remand for further proceedings consistent with this opinion.

### Validity of Lillian's Will

Although we reverse on jurisdictional grounds, we address issues relating to the validity of the will for purposes of judicial efficiency as they may be relevant on remand. Craig contends that "[t]he superior court erred in revoking the Will Probate proceeding and invalidating the will of testator Lillian Tymony." He asserts that the existence of interested witnesses to the will does not render it invalid and that Judy did not meet her burden to prove its invalidity. We agree.[11]

A will is presumed valid. In re Melter, 167 Wn. App. 285, 298, 273 P.3d 991 (2012). In a proceeding to contest the validity of a will, the burden rests on the person contesting that validity. RCW 11.24.030. The contestant must prove

---

[10] Based on counsels' statements at oral argument on review, this may be because the family believed Lillian had transferred her interest in the 2502 property before she died.

[11] At no point in either his oral or written rulings did the court affirmatively state that the will was invalid. The effect of its order, however, was precisely that: it "grant[ed]" the TEDRA petition to invalidate the will, dismissed the second probate action and revoked Craig's letters testamentary, and ordered that Judy administer the estate under laws of intestacy with Judy as administrator. Despite Judy's contentions at oral argument on review that "for the purposes of our discussion today we can consider the will valid"—which comes close to conceding, if it does not in fact concede, many of Craig's points—the order functionally invalidated the will and we will treat it in that light.

their case by clear, cogent, and convincing evidence. In re Torstensen's Estate, 28 Wn.2d 837, 839-40, 184 P.2d 255 (1947).

One of the bases upon which an interested person may challenge a will is "undue influence." RCW 11.24.010. Influence is undue when imposed "at the time of the testamentary act . . . [such that it] interfered with the free will of the testator and prevented the exercise of judgement and choice." Dean v. Jordan, 194 Wn. 661, 671, 79 P.2d 331 (1938). A number of factors are considered in determining whether a will is invalid because of undue influence, including the relationship between the testator and the influencer, whether the influencer participated in the preparation of the will, and whether the influencer received an unusually large part of the estate. Mueller v. Wells, 185 Wn.2d 1, 10-11, 367 P.3d 580 (2018).

This case involves questions of the impact of a statutorily created presumption of the existence of undue influence found in RCW 11.12.160. RCW 11.12.160 governs the impact of interested witnesses on the interpretation of a will.[12] It defines an "interested witness" to a will as "one who would receive a

---

[12] It is located within Title 11: Probate and Trust Law. RCW 11.24 concerns will contests generally. The immediate appeal arises out of a TEDRA action, governed by Chapter 11.96A. TEDRA does not supplant other parts of Title 11. In re Estate of Rathbone, 190 Wn.2d 332, 346, 412 P.3d 1283 (2018). Instead, its purpose is to provide for resolution of "disputes and other matters involving trusts and estates in a single chapter under Title 11 RCW." RCW 11.96A.010.

gift under the will." RCW 11.12.160(1). It goes on to describe the impact of an interested witness on probate and disposition of the estate:

> A will or any of its provisions *is not invalid because it is signed by an interested witness.* Unless there are at least two other subscribing witnesses to the will who are not interested witnesses, the fact that the will makes a gift to a subscribing witness creates a rebuttable presumption that the witness procured the gift by duress, menace, fraud, or undue influence.

RCW 11.12.160(2) (emphasis added). If the presumption created by the existence of the interested witness is not rebutted, "the interested witness shall take so much of the gift as does not exceed the share of the estate that would be distributed to the witness if the will were not established." RCW 11.12.160(3). The presumption has "no effect other than that stated in subsection (3) of this section." RCW 11.12.160(4). Case law confirms that evidence of the statutory presumption "does not relieve the contestants from the duty of establishing their contention [that the will is invalid] by clear, cogent and convincing evidence." In re Estate of Kessler, 95 Wn. App. 358, 378, 977 P.2d 591 (1999).

Though the terms are identical, the "undue influence" sufficient to invalidate a will is thus qualitatively different than the statutory presumption of "undue influence" created by RCW 11.12.160.

In support of its order, the court references only two authorities: RCW 11.96A—the TEDRA statute, discussed vaguely as providing the court "full and ample power and authority" to manage estate disputes—and RCW 11.12.160, which the order states governs the issue. The TEDRA statute, because it is not an independent source of authority for the superior courts over

13

nonintervention wills, cannot suffice to rule the will invalid. In re Estate of

Rathbone, 190 Wn.2d 332, 346, 412 P.3d 332 (2018).

To the extent that RCW 11.12.160 is invoked to invalidate the will—and it

appears to be the principle, if not the only, justification—it cannot. Not only does

the statute explicitly prohibit such a use of its presumption, but Kessler further

establishes that the presumption does not substitute for the TEDRA petitioner's

duty to bring forward sufficient proof. 95 Wn. App. at 378. The court, finding that

Craig had failed to rebut the statutory presumption of undue influence, appears to

have then relied on that presumption as sufficient evidence to find the sort of

undue influence capable of invalidating a will.[13] By conflating the two, it

misapplied RCW 11.12.160. As a result, no cited basis supports the court's

order.

Nor does any other basis support the order. Judy's initial invalidity

argument focused on Cliff's assertions that he and the other witnesses did not,

as required by statute, observe their mother sign the will. RCW 11.12.020. The

petition did not claim that the will was invalid due to any sort of undue influence.

Declarations from Craig and Diane, the two other witnesses to Lillian's will, and

---

[13] Apparently underlying the court's reasoning is the idea that the statutory presumption's effect was to make probate proceedings under either the will or intestacy functionally identical. The court's order states "the only individuals who would be negatively affected by the distribution of the Decedent's estate under the laws of intestacy are the interested witnesses." This is untrue. It ignores Sharon's inherited ownership of the 2502 property and fails to consider Cliff and Diane's life estate in the 2442 S. Angeline St. property. Additionally, since the relative values of the two properties and the life estate have not been established, the court is not, and was not, in a position to determine the relative worth to the heirs of inheritance under the will and under intestacy.

from the notary counter Cliff's assertion.  Judy did not address this argument again either in her reply to Craig's motion to dismiss or at oral argument in front of the court, and it was not a basis for the court's order.  Though undue influence had not been pleaded, counsel for Judy still came close during argument in front of the court to conceding that she had not met her burden to demonstrate undue influence before clarifying that she was not making an undue influence argument.[14]

To the extent that the issue was in front of the court, sufficient evidence does not exist to support a finding that undue influence was highly probable, nor that the will was invalid because it was signed outside of Lillian's presence.  The weight of the evidence instead goes in the other direction: any argument for undue influence is supported by no more than the existence of interested witnesses to the will, and any indication that the will was witnessed outside of Lillian's presence is a minority position opposed by the notary, the only disinterested witness.[15]

---

[14] Judy's counsel stated:
> I believe Counsel is right that if we needed to prove undue influence, perhaps we have not done that yet.  I think, frankly, looking at the will, understanding RCW 11.12.160, we could make a case for undue influence.  But in that case, the case would probably need to be certified for trial and we would take the testimony of witnesses, etc., etc.
>
> That's not actually what we're alleging here or what we're trying to prove.

[15] Where "need for an extended hearing arises," King County Local Civil Rule 98.14 permits for the matter's certification for trial.  Given the number of disputed facts in the present case, certification would have been appropriate.

Finally, Judy contends that RCW 11.28.250 provides a basis for the court's decision. This statutory provision allows for the revocation of letters testamentary where the personal representative of the estate has mismanaged its distribution. Where a court has done so, it must "immediately appoint some other personal representative." RCW 11.28.250. The statute provides for no other possible remedy. RCW 11.28.250. It did not, as a result, empower the court to make a determination that the will was invalid. And the court's order did not cite to RCW 11.28.250 as a basis for his decision, nor did it appoint a new personal representative to probate the will. Had the court done so, the will names Craig Tymony Jr. as an alternative personal representative if Craig is unable to fulfil his duties. Contrary to counsel's position at oral argument, Judy herself is not, therefore, in a position to be appointed the personal administrator of Lillian's will.

Attorney Fees

1. <u>Court's Fee Award</u>

Craig finally challenges the court's award of attorney fees. Our reversal of the court's order granting the TEDRA petition encompasses this award. We briefly address it nonetheless.

The TEDRA statute grants the trial court, and any court on appeal, significant discretion to order costs, including "reasonable attorneys' fees," to any party from another party to the proceedings. RCW 11.96A.150(1). "The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable."

RCW 11.96A.150(1). The court "may consider any and all factors that it deems to be relevant and appropriate." RCW 11.96A.150(1). We review these awards for abuse of discretion, which means that we "will uphold the court's decision, unless it is manifestly unreasonable or based on untenable grounds or reasons." Bale v. Allison, 173 Wn. App. 435, 461, 294 P.2d 789 (2013) (reversing the trial court's decision about a deed's validity and remanding for reconsideration of the subsequent fee award).

The court here ordered that Craig pay all legal fees in the three proceedings below. In its oral ruling, the court referenced RCW 11.20.010, which creates a duty for the executor of a will to initiate probate within 40 days of notice of the death of the testator and establishes liability to parties aggrieved by any willful disregard of that duty. RCW 11.20.010 is not a freestanding grant of authority to the trial court to award fees. The court did not cite to any such authority, so it is reasonable to assume that in awarding fees it was exercising its powers under the TEDRA statute.

For factual support, the court's written order cited to Craig's failure to probate Lillian's will for eight years and his failure to inform the court of the existence of the intestacy probate action when initiating the will probate as justification for the fees. Specifically, the court's Finding of Fact and Conclusion of Law 22 awards fees in part because Craig's failure to probate "added unnecessary cost and complexity to these proceedings."

It is certainly true that the manner of this estate's probate has been unnecessarily complex. But since at least one probate action would have been

17

necessary regardless of the probate's delay, awarding fees for *both* probate actions is unreasonable.

Additionally, though we will not engage in a full sufficiency of the evidence analysis here, we note that Craig's decision not to promptly probate the will appears to have been in good faith, rather than a willful disregard of his duties as required by RCW 11.20.010. Craig's failure to mention Judy's intestacy probate when filing the will probate action similarly appears to have been the result of a good faith reliance on the advice of his attorney. RCW 11.20.010's incorporation into a fee award based on the TEDRA statute's fee provision—if that was the intent of the court—does not appear to be supported on these grounds.

2. <u>Attorney Fees on Appeal</u>

Both sides request attorney fees on appeal. It is within the court's power to award fees. RCW 11.96A.150(1) (TEDRA); RCW 11.24.050 (permitting award of reasonable attorneys' fees in will contests). We grant Craig fees on appeal as the prevailing party.

We reverse and remand for further proceedings consistent with this opinion.

Smith, A.C.J.

WE CONCUR: